[Cite as *Hall v. Hall*, 2019-Ohio-81.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


JEANNE DEMONTAGNAC HALL,     :

    Appellee,                :           CASE NO. CA2018-05-091

                        :           O P I N I O N
- vs -                               1/14/2019

                        :

JOHN ANDREW EVERTON HALL,     :

    Appellant.             :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR14-11-1154


Barron Peck Bennie & Schlemmer, Nancy J. Frazier, 3074 Madison Road, Cincinnati, Ohio 45209, for appellee

Courtney Caparella-Kraemer, 4841 Rialto Road, Suite A, West Chester, Ohio 45069, for appellant


**HENDRICKSON, J.**

{¶ 1} Appellant, John Andrew Everton Hall ("Father"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, that modified the terms of the shared parenting plan he and appellee, Jeanne Demontagnac Hall ("Mother"), entered into at the time of their December 2015 divorce. For the reasons set forth below, we affirm the decision of the trial court.

{¶ 2} At the time of their divorce, Mother and Father had a son, M.H., born April 18, 2005, and a daughter, S.H., born July 5, 2007. The final decree of divorce incorporated and adopted an agreed upon shared parenting plan, which provided that both parties were the residential parents and legal custodians of the children. As pertinent to the present appeal, the parties' shared parenting plan provided, in relevant part, as follows in Article 2:

> **School Year Daily Plan.** Mother and Father shall have equal time with the parties' minor children. Mother shall have the children each week on Monday afterschool until Wednesday end of school. Father shall have the children each week on Wednesday afterschool until Friday end of school. The parents shall alternate weekends from Friday at 6:30 p.m. until Monday morning to school, if no school, then 9:00 a.m. The parents currently utilize the Boys & Girls Club in West Chester for afterschool care on Wednesdays. The parents agree this arrangement shall continue to be utilized for afterschool care during the work week, if needed by either parent for work related obligations. Father shall retrieve the children from the Boys & Girls Club on his parenting days (Wed.-Fri.) by 6:30 p.m. Mother may choose to pick up the children from their bus stops, directly from school, or from the Boys & Girls Club on her parenting days. The annual membership for the Boys & Girls Club has already been paid for this school year, in the future, each parent shall be financially responsible for before or afterschool care costs on his or her parenting day(s). In the future, each parent shall be equally responsible for the annual Boys & Girls Club membership.

{¶ 3} Further, Article 9 of the plan provided as follows:

> **Day Care Provider.** Parents agree that the best interest of the Child is served by having continuity in the Child's daily life. For this reason, when work related day care is needed, Parents shall use the same day care/child care provider whenever practicably possible. If any change in the provider is later necessary, Parents shall cooperate with the decision of changing the day care provider. Otherwise, Parents will continue using the Boys and Girls Club.

{¶ 4} Following their divorce, Mother and Father maintained separate residences in West Chester, Ohio. The parties' homes were approximately two minutes away from one another, and the parties' abided by the parenting-time provisions set forth above. After school on Wednesdays, the children were bused to the Boys & Girls Club in West Chester.

However, midway through the 2016 school year, the Boys & Girls Club stopped providing transportation from the school to its facility. Due to work constraints, Father was unable to pick the children up from school to transport them to the Boys & Girls Club. Father permitted the children to stay at his home, unsupervised, from the time the children got out of school until Father was done with his work day.

{¶ 5} On May 2, 2017, Mother filed a motion seeking to have Father held in contempt for failing to abide by the provisions of the shared parenting plan. Mother argued Father violated the plan by not utilizing the Boys & Girls Club for after-school care.[1] Shortly thereafter, Father filed motions to amend and modify the shared parenting plan, seeking to eliminate the language regarding the Boys & Girls Club from Article 2. Father argued using the Boys & Girls Club was no longer "mutually convenient" for the parties as the Club had stopped providing transportation, and Father stated he had made "alternative childcare arrangements" for the children. Mother then filed her own motion to modify the shared parenting plan, asking the court to enforce Article 2 and require the parties to continue to utilize the Boys & Girls Club. Mother stated her belief that it was not in the children's best interest to be left unattended for more than two hours and asked that the shared parenting plan be modified to reflect that if either parent is unavailable for more than two hours during his or her regularly scheduled parenting time, the other parent be contacted and afforded the opportunity to care for the children until the parent exercising parenting-time becomes available.

{¶ 6} A hearing on the parties' competing motions was held on September 18, 2017.

---

1. In addition to seeking to have Father held in contempt for violating the after-school daycare provision of the shared parenting plan, Mother's motion for contempt also sought to have Father held in contempt for his refusal to allow the children to attend church functions during his parenting time. In a motion filed simultaneously with her motion for contempt, Mother sought to amend the shared parenting plan to address church activities. Thereafter, the parties filed several additional motions seeking to modify the shared parenting plan, child support order, and spousal support order. For the sake of brevity and clarity, we limit our discussion of the parties' motions to those pertinent to the present appeal.

At this time, the trial court heard conflicting testimony from Mother and Father about the children's need and desire to continue attending the Boys & Girls Club after-school program. Father explained that after the Boys & Girls Club stopped providing transportation to its facility, he no longer had a way of transporting the children to the facility. Father allows the children to stay at his home without any supervision when they get out of school until he arrives home from work "anywhere from 4:45 p.m. to 6:00 p.m."

{¶ 7} Father testified that his children "do not like going" to the Boys & Girls Club and he believed the children were mature enough to be left alone for a couple of hours after school. Father thought being home alone was an important part of establishing the children's independence. Father believed his son, who was 12 years old and had just started middle school, was mature enough to "be in charge" of his 10-year

{¶ 8} -old sister for a few hours until Father got home from work. The son arrived at Father's home around 2:30 p.m. Father's daughter had a later dismissal time and did not get off the bus at Father's home until 3:30 p.m. Immediately after arriving at Father's home, the children would call Father to report their safe arrival.

{¶ 9} Father testified that the children were not in "any harm's way being at [his] home in a controlled environment for a few hours." Father worked in Miamisburg, about 20-25 minutes away from his West Chester home. He acknowledged that he could not immediately return home if there was a problem or emergency situation with the children. However, Father explained, a neighbor who worked from home had a key to his house and could check on the children if needed. In the months that the children had been staying alone at Father's home, rather than attending the Boys & Girls Club after-school program, there had not been any problems.

{¶ 10} Father admitted on cross-examination that if bus service to the Boys & Girls Club still existed or was later restored, he would "not necessarily" be opposed to the children

going there after school. However, he felt there was nothing wrong with the children staying at his home unattended for a few hours. Father was opposed to Mother caring for the children after school on the days it was his parenting time, stating he "would prefer [for his] children to come to [his] house in a safe and controlled environment than * * * be with their mother" during his parenting time.

{¶ 11} Mother testified she did not think it was in the children's best interest to be left unsupervised after school as the children were not yet mature enough to be on their own. Mother stated that "the children are at an age, a tender age, where they experiment with things and can be in trouble and things can go out of – get out of control very quickly. And they don't have the maturity to handle situations when there are accidental or emergen[cy] situations." Mother felt supervision after school was necessary for the children's safety and well-being, and she wanted the parties to continue using the Boys & Girls Club as the Club offered a safe and controlled environment that has benefited the children.

{¶ 12} Mother stated the children had been using the Boys & Girls Club' services for "at least three to four years." She preferred this facility for childcare as it was cost effective, offered late pickup times, and had a good "process." Mother explained that

> [w]hen you go into Boys & Girls Club, it's just not a place where the children just sit and wait for their parents. It actually has a set scheduled time in different activities that is supervised and with advisors. So they would come in. First thing they would do is they would give [the children] snacks. Then [the children] would work on homework. And they go from zone to zone. [The children] learn activities. They learn new things like home economics, art. You know, so it would augment the school day.
>
> And they also had people there, volunteers that would help with tutoring. So it wasn't like they were just sitting and waiting for their parents to pick them up. It was a very good way to – in fact, their mission statement is the fact that between after school to 6 p.m., it's the time where the children need the most supervision and enrichment to get through, you know, their homework and other issues until their parents pick them up.

**{¶ 13}** Although transportation from the children's school to the Boys & Girls Club had been halted, Mother testified that the school expected the transportation to start again "sometime soon." Until transportation restarted, Mother asked that the children be left in her care after school until Father was able to pick them up after completing his workday. Mother stated that, contrary to Father's testimony, she did not believe Father returned home from work until 6:30 p.m. Mother testified she is self-employed as massage therapist and also works as a substitute teacher. Mother explained that her flexible work schedule would allow her to take care of the children after school.

**{¶ 14}** After hearing the foregoing testimony, the magistrate took the matter under advisement. On November 30, 2017, the magistrate issued a decision denying Mother's motion to hold Father in contempt but granting in part the parties' respective motions to modify the shared parenting plan. After considering the best interest factors set forth in R.C. 3109.04(F), the court found it was in the children's best interest to modify Article 2 as follows:

> The parents may, and are strongly encouraged, to mutually agree on provisions for afterschool care and transportation of the children. If, however, the parents are unable to agree the following shall control:
>
> If the possessing parent is available to provide in-person afterschool child care on their parenting days, that parent may do so.
>
> If the possessing parent is not available to provide in-person afterschool child care on their parenting day, the children shall attend afterschool care at the Boys & Girls Club of West Chester so long as transportation is provided from the children's school to the Club.
>
> If Father is not available to provide in-person afterschool child care on his parenting day AND, if, because of a lack of available transportation, it is impractical for the children to attend afterschool care at the Boys & Girls Club of West Chester, AND no comparable substitute is available, Mother, so long as she is available, shall provide afterschool child care until the earlier of Father being available after work or 6:30 p.m. Under this clause,

the parties shall exchange the children curbside at Mother's residence.

If, and only if, none of the foregoing clauses are applicable, the children may go directly to Father's residence after school. Father must arrange for appropriate, responsible adult supervision to ensure the children are safe and secure until Father arrives home from work.

All other provisions of the *School Year Daily Plan* provisions of the shared parenting plan not modified or otherwise in conflict with the orders herein, including but not limited to financial responsibility for costs associated with using the Boys & Girls Club of West Chester for afterschool care, remain unchanged and in full force and effect.

(Emphasis sic.)

**{¶ 15}** Father objected to the magistrate's decision, arguing the evidence demonstrated the children were mature enough to be left unattended for a couple of hours in a controlled environment until he returns home from work. Father contended the magistrate's decision and modification of Article 2 resulted in a violation of his due process rights as the magistrate infringed upon his fundamental right to make decisions about the "care, custody, and control" of his children. Finally, Father argued that even if the magistrate did not err in modifying the shared parenting plan, the modification was overbroad as it required the children to "have after school care until they emancipate." The trial court overruled Father's objections and adopted the magistrate's decision after concluding that "the Magistrate's decision is complete and based on sound reasoning."

**{¶ 16}** Father timely appealed, raising two assignments of error for our review.

**{¶ 17}** Assignment of Error No. 1:

**{¶ 18}** THE TRIAL COURT ERRORED [SIC] BY ORDERING AFTERSCHOOL CARE FOR THE MINOR CHILDREN AS IT VIOLATES FATHER'S DUE PROCESS RIGHTS.

**{¶ 19}** In his first assignment of error, Father argues the trial court erred by modifying the shared parenting plan to require after-school care for the children on his parenting days,

as the court's decision violates his fundamental right to make decisions concerning the care, custody, and control of his children. Father contends that as a residential parent, he should have "the right to make the day-to-day decisions for the minor children, in the best interest of the minor children," when they are in his care. Because he believes the children do not need constant adult supervision and are mature enough to be left on their own for a few hours, Father argues the trial court erred by modifying Article 2 of the shared parenting plan to require after-school supervision.

{¶ 20} "The liberty interest of parents in the care, custody, and management of their children is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court." *Denier v. Carnes-Denier*, 12th Dist. Warren Nos. CA2016-02-012 and CA2016-04-022, 2017-Ohio-334, ¶ 22, citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054 (2000). "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel* at 66. *See also Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982).

{¶ 21} In the present case, Mother and Father – both residential parents with strong and differing opinions as to how their children should be cared for after school – sought to modify the terms of an agreed upon shared parenting plan. When a parent seeks to modify the terms of the shared parenting plan, rather than seeking to change the designation of the residential parent and legal custodian, the best-interest standard in R.C. 3109.04(E)(2)(b) controls the analysis. *Suwareh v. Nwankwo*, 12th Dist. Butler No. CA2017-12-174, 2018-Ohio-3737, ¶ 19; *Castanias v. Castanias*, 12th Dist. Warren No. CA2007-01-015, 2008-Ohio-2909, ¶ 18. R.C. 3109.04(E)(2)(b) provides that

> [t]he court *may modify the terms of the plan for shared parenting* approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court

determines that the modifications are in the best interest of the children or *upon the request of one or both of the parents under the decree*. Modifications under this division may be made at any time. *The court shall not make modification to the plan under this division, unless the modification is in the best interest of the children.*

(Emphasis added.)

{¶ 22} Under this standard, the court must consider the wishes of the parents as they relate to the care, custody, and control of the children. See R.C. 3109.04(F)(1)(a). However, the court must also consider a variety of other factors in determining the best interest of the children. *Carr v. Carr*, 12th Dist. Warren Nos. CA2015-02-015 and CA2015-03-020, 2016-Ohio-6986, ¶ 22. These factors include, but are not limited to: (1) the child's wishes, as expressed to the court in chambers; (2) the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interests; (3) the child's adjustment to home, school, and community; (4) the mental and physical health of all persons involved in the situation; (5) the parent more likely to honor and facilitate visitation; (6) whether one parent has denied the other of parenting time; (7) whether child support orders have been followed; and (8) whether either parent has established or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(b)-(j). While a parent's wishes about the care and control of his or her children must be considered by the court, the "parent's wishes should [not] be placed before a child's best interest." *Harold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 44.

{¶ 23} "[I]n reviewing a domestic relations issue, an appellate court employs an abuse of discretion standard of review." *McNeal v. Mahon*, 12th Dist. Clermont No. CA2015-11-094, 2016-Ohio-5373, ¶ 20. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse-of-

discretion standard, a reviewing court must not substitute its judgment for that of the trial court." *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16.

{¶ 24} After examining the entire record, we find no error in the trial court's modification of Article 2. The court considered the best interest factors set forth in R.C. 3109.04(F)(1), including the wishes of the parents as it related to use of the Boys & Girls Club and after-school supervision. The court was presented with differing opinions as to the need to continue using the Boys & Girls Club, the need to have supervision for the children after school while Father was still at work, the children's levels of maturity, and the children's wishes about continuing their attendance at the Boys & Girls Club.[2] Father testified the children no longer liked attending the Boys & Girls Club, were mature enough to remain unsupervised at his home after school for a few hours, and benefitted from the independence they were learning by being on their own. Mother, on the other hand, testified that the children, at ages 10 and 12, were not mature enough to be left on their own after school as they were at an age where "they experiment with things and can be in trouble and things go out * * * of control very quickly." Mother did not think the children could handle emergency situations on their own and would benefit from the structure and supervision they received at the Boys & Girls Club or when in her care.

{¶ 25} After considering the foregoing conflicting opinions and testimony, the court found supervision was necessary and modified the shared parenting plan to require after-school supervision either by Father, by the Boys & Girls Club (when transportation was provided), by Mother when she is available, or by an adult at Father's home. This court will not second-guess the trial court's decision or substitute its judgment for that of the trial court. *In re E.L.C.*, 2015-Ohio-2220 at ¶ 16. The trial court was in the best position to view the

---

2. We note that the magistrate did not conduct an in-camera interview with the children, but rather considered each parent's representations about the children's wishes.

witnesses, observe their demeanor, gestures and voice inflections, and to use those observations in weighing the credibility of the witnesses' testimony. *See McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 11. In determining what weight to assign to Mother's and Father's testimony, the trial court was free to believe all, part, or none of their testimony. *Id.*

{¶ 26} As evidence was presented at the September 18, 2017 hearing to support the trial court's determination that it is in the children's best interest to have supervision after school, we find no error in the trial court's modification of Article 2. Contrary to Father's arguments, his due process rights were not violated by the court's modification of the shared parenting plan to require after school supervision of the children as the court considered Father's wishes about the care and control of his children before determining his wishes should not be placed above the children's best interests. Father's first assignment of error is, therefore, overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRORED [SIC] BY FAILING TO CLARIFY [ITS] DECISION.

{¶ 29} In his second assignment of error, Father argues the trial court's decision is overbroad as it requires the children to have after-school care, whether it be provided by the Boys & Girls Club, Mother, or an alternate source, until the children are emancipated at age 18. Father also argues the court's order is unclear as it does not set forth a "timeframe in which Mother must notify Father whether she is available and intends to exercise * * * after school time with the minor children" when he is unavailable and the children are not attending the Boys & Girls Club. Father seeks a remand to have the trial court address these issues.

{¶ 30} Contrary to Father's arguments, we find the court's order is not overbroad and that a remand is unnecessary as the court's modification of Article 2 clearly provides that the

parties "may * * * mutually agree on provisions for afterschool care and transportation of the children." When Mother and Father reach an agreement that the children are of an age and maturity level where they no longer need supervision, the parties may amend the after-school care provision to allow the children to remain at Father's or Mother's home unsupervised after school. If the parties are unable to reach an agreement, but Father believes the children have reached an age and maturity level where they no longer need after-school care, Father may move to modify the shared parenting plan. At such time, the court will consider the best interests of the children, in accordance with R.C. 3109.04(E)(2)(b), to determine if after-school care is still needed.

{¶ 31} Further, with respect to Mother's ability to care for the children after school, the court's modification of Article 2 clearly indicates the duty is on Father to either (1) supervise the children after school himself, (2) send the children to the Boys & Girls Club (if transportation is available), (3) contact Mother to see if she is available after school to care for the children, or (4) arrange for adult supervision at his residence after school. If Father contacts Mother and she is either unavailable to care for the children or she fails to respond to Father's communications to indicate her availability, then Father must arrange for appropriate, reasonable supervision at his home.

{¶ 32} As the court's modification of Article 2 did not result in the provision being overbroad or unclear, we find no merit to Father's arguments and overrule his second assignment of error.

{¶ 33} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.