[Cite as *Mack v. Mack*, 2019-Ohio-2379.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


KARLA MACK,                                    :

    Appellee,                               :               CASE NO. CA2018-09-179

                                            :               O P I N I O N
    - vs -                                                          6/17/2019

                                            :

PHILLIP MACK,                                  :

    Appellant.                              :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2014-11-1167


Cheryl R. Washington, 10 W. Second Street, Suite 2225, Dayton, Ohio 45402, for appellee

Scott N. Blauvelt, 315 South Monument, Hamilton, Ohio 45011, Ohio 45069, for appellant


**S. POWELL, J.**

{¶ 1}  Appellant, Phillip Mack ("Father"), appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, denying his request to be designated as his son's residential parent for school purposes.  Father also appeals from the domestic relations court's decision modifying his parenting time schedule with his son.  For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On November 23, 2015, Father and appellee, Karla Mack ("Mother"), were divorced. The parties have one child, I.M., who was five years old at the time of the divorce. Following their divorce, the parties were subject to a separation agreement and shared parenting plan. As relevant here, the shared parenting plan provided Father with parenting time and designated Mother as I.M.'s residential parent for school purposes. It is undisputed that Mother has retained that designation at all times relevant.

{¶ 3} Following their divorce, both parties moved out of Ohio to pursue other employment opportunities; Father moved to Pennsylvania in late 2016 while Mother moved to North Carolina with I.M. in the summer of 2017. Since moving to North Carolina with Mother, I.M. began attending school in Mother's local school district. While there, I.M. has made friends and has participated in school sports. I.M. has never attended school in Ohio.

{¶ 4} On December 8, 2017, five months after Father moved back to Ohio, Father filed a motion requesting the domestic relations court to modify the parties' shared parenting plan by designating him as I.M.'s residential parent for school purposes. In support, Father argued the modification would provide I.M. with a "structured environment" and allow him "more contact with extended family members" located in Ohio. Father also moved the domestic relations court to modify the parties' parenting time to coincide with his and Mother's work schedules.

{¶ 5} On December 28, 2017, a hearing on Father's motion was held before a domestic relations court magistrate. Both Father and Mother testified at this hearing. After taking the matter under advisement, the magistrate issued a decision modifying the parties' shared parenting plan by designating Father as I.M.'s residential parent for school purposes. Despite Father and Mother living approximately nine hours apart, the magistrate also modified the parties' parenting time by awarding Mother parenting time with I.M. on

alternate weekends.

{¶ 6} Mother filed a number of objections to the magistrate's decision. Mother's objections challenged the magistrate's decision designating Father as I.M.'s residential parent for school purposes and the magistrate's decision modifying the parties' respective parenting time. After receiving Mother's objections, the domestic relations court held a hearing on the matter. Just as they had done at the hearing held before the domestic relations court magistrate, both Father and Mother testified at this hearing.

{¶ 7} On August 2, 2018, the domestic relations court issued a decision that affirmed in part, reversed in part, and modified the magistrate's decision. As pertinent to this appeal, the domestic relations court rejected the magistrate's decision designating Father as I.M.'s residential parent for school purposes. The domestic relations court also rejected the magistrate's decision regarding the parties' respective parenting time schedules, opting instead to implement a parenting time schedule that was dependent on where Father was then stationed for work.

{¶ 8} Specifically, when Father's employment placed him within 50 miles of Mother's residence in North Carolina, the domestic relations court ordered:

> [Father] shall be able to exercise parenting time when within 50 miles of [Mother's] residence in North Carolina upon 24 hour notice. If [Father] is in the area overnight and has a suitable place for [I.M.] to stay, he may keep [I.M.] overnight for as long as he is in the area, up to seven days. As an exception to the transportation orders below, [Father] shall provide transportation from his location to [Mother's] residence if she is required to work. Otherwise, the parties shall meet in the middle or alternate transportation.

{¶ 9} And, when Father's employment placed him within 100 miles of Mother's residence in North Carolina, the domestic relations court ordered:

> [Father] shall have alternate weekends if he is within 100 miles of [Mother's] residence, with seven days notice. The weekends shall begin from after school on the last day of school before the

weekend, and end at 8 PM the evening before school starts. This includes any long weekends.

{¶ 10} The domestic relations court also established a transportation order regarding Father's parenting time on holidays and I.M.'s summer vacation. Specifically, the domestic relations court ordered:

> The parties shall meet in Weston, West Virginia, or another agreed location located geographically between the parties' residences. If [Father] is traveling for his work, [Mother] shall agree to meet him halfway between his work location and her residence, so long as the child does not incur total travel longer than nine hours. [Mother] will switch shifts to provide this transportation if necessary.

{¶ 11} The domestic relations court explained that it found these orders were in I.M.'s best interest because:

> It is not in [I.M.'s] best interest to travel for the approximate nine hours between the parents' residences for less than three days of parenting time. The court has fashioned specific parenting time and transportation orders in the event that the parties are geographically closer.

**Appeal and Standard of Review**

{¶ 12} Father now appeals from the domestic relations court's decision, raising two assignments of error for review. Both of Father's assignments of error address the modification of the parties' shared parenting plan. When a parent seeks to modify the terms of the shared parenting plan, such as the case here, the best-interest standard in R.C. 3109.04(E)(2)(b) applies. *Hall v. Hall*, 12th Dist. Butler No. CA2018-05-091, 2019-Ohio-81, ¶ 21.

{¶ 13} Pursuant to R.C. 3109.04(E)(2)(b), the domestic relations court may modify the terms of the shared parenting plan "if the court determines that the modifications are in the best interest of the children[.]" Under this standard, and in accordance with R.C. 3109.04(F)(1), the domestic relations court must consider all relevant factors, including, but

not limited to:

> (1) The wishes of the child's parents regarding the child's care;

> (2) The child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

> (3) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

> (4) The child's adjustment to the child's home, school, and community;

> (5) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

> (6) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

> (7) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 14} The domestic relations court's determination of what is in the best interest of a child will not be reversed absent an abuse of discretion. *McNeal v. Mahon*, 12th Dist. Clermont No. CA2015-11-094, 2016-Ohio-5373, ¶ 20. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude." *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 10.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE DECISION DENYING APPELLANT'S MOTION TO BE DESIGNATED RESIDENTIAL PARENT FOR SCHOOL PURPOSES WAS CONTRARY TO THE

MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 17} In his first assignment of error, Father argues the domestic relations court erred by denying his request to modify the parties' shared parenting plan by designating him as I.M.'s residential parent for school purposes. We disagree.

{¶ 18} As noted above, we review the modification of a parties' shared parenting plan designating a child's residential parent for school purposes for an abuse of discretion. *In re A.N.G.G.*, 12th Dist. Warren No. CA2018-08-084, 2019-Ohio-1294, ¶ 16. Such a review requires this court to determine whether it was an abuse of discretion for the domestic relations court to find it was in I.M.'s best interest for Mother to remain the child's residential parent for school purposes. The domestic relations court reached its decision by analyzing the best interest factors outlined in R.C. 3109.04(F)(1). The following is a summary of the domestic relations court's best interest findings.

{¶ 19} Initially, as it relates to the parties' wishes regarding I.M.'s care, the domestic relations court noted that Mother had been designated I.M.'s residential parent for school purposes in the parties' shared parenting plan. But, as evidenced by Father's motion, the domestic relations court found Father wanted to modify the parties' shared parenting plan to designate him as I.M.'s residential parent for school purposes.

{¶ 20} Next, in regard to I.M.'s wishes, the domestic relations court noted that it had reviewed the audio recording of the in camera interview between the magistrate and I.M. Following this review, the common pleas court noted that it found I.M. had answered the magistrate's questions appropriately. The domestic relations court also noted that its review of the in camera interview proved that I.M. "loves both parents and enjoys his parenting time with both of them."

{¶ 21} As for I.M.'s interaction and interrelationship with his parents and any other person who may significantly affect his best interest, the domestic relations court found

- 6 -

Mother had been designated I.M.'s residential parent for school purposes since I.M. had first started attending school. The domestic relations court also found Mother had secured a tutor for I.M. to assist in his academic progress, as well as a therapist "for the purposes of helping [I.M.] adjust to his father's frequent absences due to work responsibilities."

{¶ 22} As it relates to Father, the domestic relations court found Father had recently moved from his apartment in Pennsylvania back to Ohio where he resided with his mother and sister. However, despite Father now residing with family in Ohio, the domestic relations court noted that Father's sister testified Father "was in the home approximately every other weekend." The domestic relations court also found that Father's extended family and girlfriend had acted as "caregivers" for I.M. due to Father's frequent absences for work.

{¶ 23} The domestic relations court further found Father had secured employment with a local public school district that would allow him to have more consistent hours close to home. But, as the domestic relations court found, "four months after filing his motions, [Father] retained the job where he continues to travel extensively." The domestic relations court also found Father's chosen employment required him to remain in the same locale "for as long as the project lasts." This, as the record indicates, could last many months or even years.

{¶ 24} In regard to I.M.'s adjustment to his home, school, and community, the domestic relations court found I.M. had never attended school in Father's local school district in Ohio. The domestic relations court instead found I.M. was enrolled in elementary school in North Carolina "and likely has started the new school year there." The domestic relations court also found Mother had "obtained after school assistance" for I.M. in reading and math, as well as "obtained counseling for [I.M.] for assistance in dealing with his infrequent contact with [Father.]"

{¶ 25} The domestic relations court further found in regard to Father, Father's

girlfriend, and Father's mother:

> [Father] was unable to testify which school the child would attend if he were designated residential parent for school purposes. He testified that he would either take the child to school, or have him attend the school where his girlfriend's children attend and catch the bus with his girlfriend's children.

> [Father's girlfriend] testified as to the school that the child would attend if [Father] were designated residential parent. She further testified that her mother would be caregiver for afterschool. She further testified this child is bonded to her mother, although no other evidence was presented as to this bond.

{¶ 26} As for the parent more likely to honor and facilitate court-approved parenting time rights, the domestic relations court found Father had failed to communicate with Mother on certain aspects of I.M.'s care. This includes Father failing to provide Mother with his contact information and with proper notification regarding family vacations as required by the parties' shared parenting plan. Specifically, the domestic relations court found Father "did not communicate with [Mother] regarding the trip with [I.M.] to Gatlinburg, or his girlfriend's transport of [I.M.] back to Ohio."

{¶ 27} As it relates to Mother, the domestic relations court found Mother had not sought to diminish Father's parenting rights with I.M. The domestic relations court instead found Mother "makes an effort" to communicate with Father. Yet, even then, the domestic relations court found Mother had "failed to fully communicate and make decisions with [Father]." Therefore, according to the domestic relations court, "neither party includes the other in decision-making or information regarding this child."

{¶ 28} Moreover, when considering whether either parent had failed to make all child support payments, including all arrearages, the domestic relations court found Father was in arrears on his child support obligations dating back to the summer of 2017. However, although in arrears, the domestic relations court noted Mother's testimony that she

"believed" Father was still making payment towards his arrears, "but did not provide a recent history."

{¶ 29} Finally, with regard to whether either parent had established a residence, or is planning to establish a residence, outside of Ohio, the domestic relations court found Father's current employment required him to remain "in one location for as long as a project takes." This, as noted above, could last many months or even years. The domestic relations court also found that when I.M. was supposed to be with Father in Ohio that Father was oftentimes "unable to fully exercise his parenting time" due to his busy work schedule.

{¶ 30} Turning then to Mother, the domestic relations court noted that Mother had moved to North Carolina with I.M. Due to this move, the domestic relations court found "[a]t one time neither parent lived in the state of Ohio." The domestic relations court also found:

> [Father] has returned and has established his permanent residence as the house his mother and sister live in. [Mother] was training for her employment for a period of time, which she testified [precluded] her from participating in transportation. She is no longer in training. She has set shifts. On alternate weeks [Mother] works long hours during much of the week.

{¶ 31} Despite having some concerns with Mother's work schedule, the domestic relations court noted it was also "concerned that [Father's] extended family and girlfriend will be the primary caregivers for this child." The domestic relations court found this problematic because "third parties are not subject to the court's jurisdiction. Parenting orders cannot be enforced against them."

{¶ 32} Applying the abuse of discretion standard as outlined above, we find no error in the domestic relations court's decision denying Father's request to modify the parties' shared parenting plan by designating him as I.M.'s residential parent for school purposes. That is to say the domestic relations court did not abuse its discretion by finding it was in I.M.'s best interest for Mother to retain that designation. Father disputes the domestic

relations court's decision by arguing the domestic relations court made a number of incorrect factual findings and gave "insufficient consideration" to several of the best interest factors. This, according to Father, resulted in the domestic relations court unduly focusing on evidence that was hostile to him while at the same time ignoring evidence that was unfavorable to Mother. We find no merit to Father's claims.

{¶ 33} Father's argument is essentially a challenge to the weight the domestic relations court gave to each of the best interest factors. But, as this court has stated previously, it is the role of the domestic relations court "'to determine the relative weight to assign each factor, in relation to the others, when determining the [child's] best interest.'" *Manis v. Manis*, 12th Dist. Warren No. CA2014-05-070, 2014-Ohio-5086, ¶ 22, quoting *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18. This court should not, and will not, second-guess the domestic relations court's decision in regard to the appropriate weight to be given to any one of those factors. *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 35; *see, e.g., Albert v. Albert*, 2d Dist. Montgomery No. 24000, 2010-Ohio-6112, ¶ 32 ("[w]e defer to the trial court's determinations of the parties' credibility and of the appropriate weight to be given to the statutory factors").

{¶ 34} Father also argues this court should reverse the domestic relations court's decision and reinstate the magistrate's original fact findings and conclusions of law when considering "the magistrate's unique position to make credibility determinations." This we do not dispute. But, even when a matter is tried before a magistrate, "[i]t is the primary duty of the [domestic relations] court, and not the magistrate, to act as a judicial officer." *Hart v. Spenceley*, 12th Dist. Butler No. CA2011-08-165, 2013-Ohio-653, ¶ 12. This is because the domestic relations court, which serves as the judicial officer and ultimate fact finder, "retains the ability to employ its own judgment in a case even if it refers a matter to a magistrate." *Id. at* ¶ 13, citing *Koeppen v. Swank*, 12th Dist. Butler No. CA2008-09-234,

2009-Ohio-3675, ¶ 37. The domestic relations court is therefore "required to undertake an independent review of the objected matters in order to ascertain that the magistrate has properly determined the factual issues and properly applied the law." *Panhorst v. Panhorst*, 9th Dist. Summit No. 28959, 2019-Ohio-126, ¶ 21.

{¶ 35} The record indicates the domestic relations court adhered to its role as a judicial officer by independently reviewing the magistrate's decision. The domestic relations court specifically stated as much by noting it had conducted a de novo review of the record and the hearing transcript. Therefore, when taking into consideration the role of the domestic relations court, we find no error in the domestic relations court's decision making its own fact findings, conclusions of law, and credibility determinations that were contrary to those of the magistrate. This is particularly true here given the fact that the domestic relations court judge heard testimony from both Father and Mother directly. The domestic relations court was consequently able to make its own credibility determinations in deciding what was in I.M.'s best interest.

{¶ 36} It is clear that Father believes he should be designated I.M.'s residential parent for school purposes. However, "[w]hile a parent's wishes about the care and control of his or her children must be considered by the court, 'the parent's wishes should not be placed before a child's best interest.'" (Internal brackets omitted.) *Hall v. Hall*, 12th Dist. Butler No. CA2018-05-091, 2019-Ohio-81, ¶ 22, quoting *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 44. The domestic relations court, just as this court on appeal, must act in a way that places I.M.'s best interest above all else. Therefore, when considering the record properly before this court, the domestic relations court's decision denying Father's request to modify the parties' shared parenting plan by designating him as I.M.'s residential parent for school purposes was not an abuse of discretion. Accordingly, finding no abuse of discretion in the domestic relations court's decision, Father's first assignment of error

lacks merit and is overruled.

{¶ 37} Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ABUSED ITS DISCRETION IN MODIFYING APPELLANT'S PARENTING TIME.

{¶ 39} In his second assignment of error, Father argues the domestic relations court erred by modifying the parties' shared parenting plan as it relates to his and Mother's respective parenting time schedules. Specifically, Father challenges the domestic relations court's decision allowing him parenting time with I.M. on alternate weekends only if "he is within 100 miles" of Mother's residence in North Carolina or "up to seven days" if he is "within 50 miles" of Mother's residence. We review the modification of a parties' shared parenting plan regarding visitation or parenting time for an abuse of discretion. *In re R.L.S.*, 12th Dist. Warren No. CA2013-12-117, 2014-Ohio-3294, ¶ 23. We find no abuse of discretion here.

{¶ 40} Father argues the domestic relations court abused its discretion by modifying his parenting time schedule because the modification "effectively prevents" him from spending time with I.M. other than on holidays and during I.M.'s summer vacation. Father supports this claim by noting his employment typically requires him to travel to New York, Pennsylvania, or New Jersey, but not North Carolina or the surrounding areas. This, according to Father, creates an illusory parenting time schedule that is patently unfair when considering it was Mother who made the "unilateral and unannounced" decision to move to North Carolina.

{¶ 41} After a full and thorough review of the record, we find no abuse of discretion in the domestic relations court's decision. Father's chosen employment, coupled with Mother's move to North Carolina, required the domestic relations court to fashion an unorthodox parenting time schedule to serve I.M.'s best interest. Given the unique facts

and circumstances of this case, we commend the domestic relations court for fashioning the parenting time schedule that it did. This is because, as the record indicates, the domestic relations court went to great lengths to balance Father's request for additional parenting time with I.M. with its findings regarding I.M.'s best interest. We find no error in the domestic relations court's decision.

{¶ 42} In so holding, we note that Father requested parenting time with I.M. at least one weekend each month. It is therefore apparent that Father would, at least at this point, like to spend more time with his son. Due to I.M.'s struggles in coping with Father's frequent absence from his life, it is clear that I.M. desires the same. However, as the domestic relations court found, "[i]t is not in [I.M.'s] best interest to travel for the approximate nine hours between the parents' residences for less than three days of parenting time." Given I.M.'s young age and need for stability, we agree with the domestic relations court's decision.

{¶ 43} We also agree with the domestic relations court's decision to put in place a specific parenting time schedule and transportation order in the event that Father's employment places him closer to Mother's residence in North Carolina. Although it appears that Father's current employment typically requires him to travel to just New York, Pennsylvania, or New Jersey, the record is devoid of any evidence indicating Father would not be assigned to a project in North Carolina or the surrounding areas. Should that occur, which for both Father and I.M.'s sakes we hope that it does, the parties are now fully aware of their reciprocal obligations in providing I.M. with the opportunity to spend time with Father should the opportunity arise.

{¶ 44} We have no doubt that Father would like to spend more time with I.M. And, as noted above, we also have no doubt that I.M. would like to spend more time with Father. But that does not mean Father can dictate when and where he should be able to exercise

his parenting time. Nor does that mean Father can command I.M. to be transported from North Carolina to Ohio should he happen to be at home in Ohio that weekend. It is I.M.'s best interest that controls, not Father's. Therefore, finding no merit to any of the arguments raised herein, Father's second assignment of error is overruled.

**Conclusion**

{¶ 45} The domestic relations court did not err by finding it was in I.M.'s best interest for Mother to remain the child's residential parent for school purposes. We also find no error in the domestic relations court's decision to modify the parties' shared parenting plan as it relates to their respective parenting time schedules. Again, "[w]hile a parent's wishes about the care and control of his or her children must be considered by the court, 'the parent's wishes should not be placed before a child's best interest.'" (Internal brackets omitted.) *Hall*, 2019-Ohio-81 at ¶ 22, quoting *Collier*, 2005-Ohio-5334 at ¶ 44. Therefore, finding no error in the domestic relation court's decision, Father's two assignments of error are overruled.

{¶ 46} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.