[Cite as *Gebremikael v. Aruma*, 2022-Ohio-3686.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| REGAT GEBREMIKAEL, | : | |
| Appellee, | : | CASE NO. CA2022-02-022 |
| | : | O P I N I O N |
| - vs - | | 10/17/2022 |
| | : | |
| AMOS ARUMA, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR19-11-0983

Legal Aid Society of Greater Cincinnati, and Ruby M. Wilz, for appellee.

Brown, Lippert & Laite, and James R. Garvin, for appellant.

**PIPER, J.**

{¶1} Appellant, Amos Aruma ("Husband"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, following his divorce from appellee, Regat Gebremikael ("Wife"). For the reasons set forth below, we affirm the decision of the domestic relations court.

**PROCEDURAL BACKGROUND**

{¶2} Husband and Wife were married on April 15, 2015, in Butler County, Ohio,

and had one child born issue of their marriage. Wife filed a complaint for divorce on November 7, 2019. Husband answered Wife's complaint and filed a counterclaim for divorce on November 26, 2019.

{¶3} The court held a hearing on January 21, 2021, and continued the case until February for the parties to submit closing arguments. The trial court did not have enough information after the January hearing to come to a final decision, so the court subsequently ordered the parties to reappear to provide supplemental information.

{¶4} On August 6, 2021, the court issued a decision to serve as temporary parenting and support orders and also ordered the parties to appear on August 20, 2021, to provide additional information and testimony. In addition, Husband was ordered to bring documentation related to his credit card accounts and a Toyota RAV4 vehicle.

{¶5} At the hearing on August 20, 2021, both parties appeared, but Husband did not produce the requested documentation for the credit cards or the vehicle, so the court ordered the parties to appear for a second and final hearing on September 21, 2021.

{¶6} At the final hearing on September 21, 2021, Wife was present, as was Husband's counsel, but Husband did not appear. Husband's counsel made several attempts to contact Husband, but counsel had no information on his client's whereabouts. Husband's counsel brought with him the requested documentation for the credit cards, but there remained no documentation regarding the RAV4.

{¶7} On September 22, 2021, the court issued a second decision, effective September 1, 2021. In its decision, the court recalculated child support using the Family Law Software, Inc. worksheet, and ordered Husband to pay $822.07 in monthly child support and $600 in monthly spousal support.

{¶8} Husband filed a motion to correct, and the court conducted a hearing on December 1, 2021. In his motion, Husband requested that the trial court recalculate child

support using the Ohio Department of Job and Family Services (ODJFS) worksheet and to include a child in Nigeria. Husband also requested that the court correct an earlier finding that Husband engaged in financial misconduct. At the hearing, Husband did not present any relevant documentation regarding a Nigerian child.

{¶9} The court issued an entry on December 3, 2021, stating that it did not add another child in its calculation of child support because Husband "did not provide any documentation that he is obligated to support that child" and the child does not live with him. The court also stated that Husband's financial misconduct had been cured.

{¶10} On January 24, 2022, the court entered its final decree of divorce, adopting the evidence and testimony from the hearings conducted on January 21, August 20, and September 21, 2021, as well as its previous orders from August 6, and September 22, 2021. It is from this final order that Husband appeals, raising four assignments of error.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO CORRECT, AND REFUSING TO CALCULATE CHILD SUPPORT USING THE CHILD SUPPORT WORKSHEET WHICH THE OHIO DEPARTMENT OF JOBS AND FAMILY SERVICES ADOPTED.

{¶13} Husband argues in his first assignment of error that the trial court erred in using the Family Law Software, Inc. worksheet to calculate child support, asserting that the sheet does not comply with R.C. 3119.022. At the hearing on January 21, 2021, Husband referenced a baby boy he left in Nigeria when the boy was just four days old. Husband contends that the Family Law Software, Inc. worksheet used by the trial court failed to account for this child in the child support calculation.

{¶14} Trial courts have "considerable discretion on child support issues, and their decisions on such matters will not be disturbed absent an abuse of discretion." *In re B.A.K.,*

12th Dist. Warren No. CA2021-10-093, 2022-Ohio-1443, ¶ 10. An abuse of discretion is more than error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Stevens v. Stevens*, 12th Dist. Warren Nos. CA2009-02-028 and CA2009-06-073, 2010-Ohio-1104, ¶ 33.

**ODJFS STANDARD WORKSHEET**

{¶15} R.C. 3119.022 requires that the director of job and family services "shall adopt standard worksheet forms that shall be used in all courts * * * when calculating child support and cash medical support obligations." R.C. 3119.022(A). The completion of a worksheet identical in content and form to that set forth in R.C. 3119.022 is mandatory. *Stevens* at ¶ 34. The provisions must be followed literally and technically in all material aspects. *Vanest v. Vanest*, 9th Dist. Summit No. 28498, 2017-Ohio-9302, ¶ 9.

{¶16} According to the Ohio Department of Job and Family Services Child Support Guideline (ODJFS) Manual, child support obligations are calculated using one of several tools, including the JFS 07768, "Sole/Shared Child Support Computation Worksheet." Ohio Department of Job and Family Services, *Child Support Guideline Manual for Ohio Courts and Agencies* (January 7, 2019), available at https://www.mcohio.org/JFS-Child-Support-Manual.pdf, at 1 (accessed September 28, 2022). The manual further states that "[i]n Ohio, when a court or CSEA calculates the amount of child support to be paid, the court or agency is required to use either the JFS 07768 (for sole or shared parenting orders) or the JFS 07769 (for split parenting orders)." *Id.* at 6. These schedules, including the JFS 07768 worksheet, can be found in the manual and are readily available online.[1] It is clear from the language of the statute, as well as the case law, that the JFS 07768 worksheet, or a

---

1. The required form can be found through ODJFS's website by searching for JFS 07768 in the form number search field. Ohio Department of Job and Family Services, *Forms Central*, available at http://www.odjfs.state.oh.us/forms/ (accessed October 3, 2022). The JFS 07768 worksheet (sole or shared parenting worksheet) is also available here http://www.odjfs.state.oh.us/forms/num/JFS07768/pdf/.

worksheet "identical in content and form to that in R.C. 3119.022," must be used by a court in calculating child support. *Rote v. Rote*, 12th Dist. Butler No. CA2004-10-249, 2005-Ohio-6269, ¶ 21.

{¶17} Line nine of the JFS 07768 worksheet allows a parent to receive an adjustment to their income if the parent is responsible for supporting other minor children that are not a part of the current order. Specifically, line 9(a) of the JFS 07768 worksheet instructs the party to "[e]nter the total number of children, including children of this order and other children."

## FAMILY LAW SOFTWARE

{¶18} In calculating Husband's child support obligation, the trial court used a worksheet from Family Law Software, Inc. Husband raises a concern regarding line 9(a) of this worksheet, which requires a parent to include "children of this order + other children with party." Husband argues that this language does not make "any legal or logical sense" because it fails to account for any children outside of the order, which he asserts is a violation of R.C. 3119.022.

{¶19} Husband raised this issue in his motion to correct, and the trial court stated in its entry dated December 3, 2021, that the court did not count this other child because Husband failed to provide any documentation that he is obligated to support the child. Furthermore, using the Family Law Software, Inc. worksheet, the court apparently determined that if a child existed in Nigeria, the child did not live "with" Husband.

## DUTY TO SUPPORT

{¶20} R.C. 3119.05(C) provides that a court shall adjust the amount of child support paid by a parent by determining "the amount of child support that each parent would be ordered to pay for all children for whom the parent has the legal duty to support." R.C. 3119.05(C)(1). In other words, the child support credit amount uses the "number of children

whom the parent is obligated to support." R.C. 3119.05(C)(2). A "duty to support" is defined as an "obligation imposed or *imposable* by law to provide support for a child, spouse, or former spouse, including an unsatisfied obligation to provide support." (Emphasis added.) R.C. 3115.102(D). Further, R.C. 3119.05(C)(1) requires that a court shall adjust the amount of child support paid by a parent to give credit for children not included in the current calculation by "determining the amount of child support that each parent would be ordered to pay for all children for whom the parent has the legal duty to support." R.C. 3119.05(C)(1).

{¶21} The trial court's finding that Husband was not "obligated to support" another child was based on Husband's inability to show a child support obligation. Husband argues that the legislature's use of the word "imposable" and the phrase "would be ordered to pay" means that it is not necessary for a parent to either have a support order in place or live with the child to have a legal duty to support the child.

{¶22} While we agree with Husband that an individual has a duty to support a minor biological child and that a support order could therefore be imposed, a court does not abuse its discretion in refusing to include a child alleged to be in existence when there is no evidence that the child actually exists, nor evidence that Husband is the father.[2] Husband suggests that the trial court is obligated to accept Husband's bare allegation that there is a child in existence that he might be obligated to support. We disagree with Husband.

{¶23} Although Husband indicated that he had a baby boy in Nigeria, at no time during the pendency of this case did Husband provide documentation of being responsible for another child. Husband did not provide a birth certificate, proof of parentage, or proof

---

2. We would invite the General Assembly to evaluate the inclusion of the word "imposable" in R.C. 3115.102(D), which is incorporated into R.C. 3119.05(C)(1), as having the consequence of crediting a parent who is not fulfilling any obligation of support to a particular child.

that support was being provided for another child. Husband failed to provide any evidence that he is actually the father of a child in Nigeria, and thus that he had a duty to support such child. It is not unreasonable for a trial court to require proof of a child's existence before granting an adjustment to a child support calculation.

{¶24} While it is a better practice for the court to use the JFS 07768 worksheet to calculate child support, the use of the Family Law Software, Inc. worksheet was not reversable error in this particular case. Regardless of the worksheet content used in this specific instance, Husband is not entitled to claim credit for a Nigerian child when neither Husband's parentage nor the child's existence were established.

{¶25} Thus, we find that the trial court did not abuse its discretion in refusing to account for another child in the calculation of child support. The court did not act unreasonably, arbitrarily, or unconscionably in requiring Husband to provide proof of the child's existence before considering an adjustment to the child support calculation. As Husband failed to substantiate his claim of having another a child, his first assignment of error is overruled.

## ALLOCATION OF TAX REFUND

{¶26} Assignment of Error No. 2:

{¶27} THE TRIAL COURT ERRED BY AWARDING THE APPELLEE THE APPELLANT'S ENTIRE 2021 [*sic*] TAX REFUND, WHICH WAS THE APPELLANT'S NONMARITAL ASSET.

{¶28} In his second assignment of error, Husband argues that the trial court erred in allocating his 2020 tax refund of $2,822.00 to Wife. At the final hearing on September 21, 2021, where Husband failed to appear, Wife raised the issue of the jointly filed 2020 tax return. Finding that there was no evidence that Husband had paid any of the ordered spousal support, the court allocated the value of the tax return to spousal support arrears.

Husband asserts that the court awarded his separate property "without explanation" and that the court "did not explain under what authority the appellant's separate property is subject to division."

{¶29} The trial court is given broad discretion in fashioning a property division and will not be reversed absent an abuse of discretion. *Warman v. Warman*, 12th Dist. Butler No. CA2016-08-170, 2017-Ohio-7462, ¶ 16. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable; there must be more than merely an error in law of judgment. *Id.*

{¶30} The trial court has the authority to determine that a spouse's separate property may not be awarded to them. R.C. 3105.171(D). Here, the trial court found that Husband's separate property, the 2020 tax return, was to be awarded to Wife as arrears for spousal support. Husband contends that the trial court allocated his property "without any explanation." However, in discussing the tax return, the trial court referred to the tax return in two different sections of its decision issued September 22, 2021.[3] In the section discussing property division, the trial court lists the 2020 tax refund and states that the amount was to be allocated toward spousal support arrears as "there [was] no evidence that [Husband] [had] paid any of the ordered amounts thus far." In the spousal support section of the decision, the trial court again states that the amount was for spousal support arrears.

{¶31} We do not find that the court abused its discretion in allocating Husband's 2020 tax return to his spousal support arrears. Husband never disputed that he was in arrears for spousal support, nor did he dispute the amount—he simply chose to ignore the court's reason for allocating his separate property, which is something we decline to do.

---

3. The decision issued September 22, 2021, was fully incorporated by reference, and adopted as if fully rewritten as part of the final decree.

We do not find the allocation of Husband's separate property to be unreasonable, arbitrary, or unconscionable, and thus, Husband's second assignment of error is overruled.

{¶32} Husband's third and fourth assignments of error involve the same standard of review. We address these assignments together.

{¶33} Assignment of Error No. 3:

{¶34} THE TRIAL COURT ERRED BY AWARDING THE APPELLEE PARTIAL VALUE OF A TOYOTA RAV4.

{¶35} Assignment of Error No. 4:

{¶36} THE TRIAL COURT ERRED BY FINDING THE APPELLANT COMMITTED FINANCIAL MISCONDUCT, AND DESIGNATING CREDIT CARD DEBT INCURRED DURING THE COURSE OF THE MARRIAGE AS APPELLANT'S SEPARATE DEBT.

{¶37} In his third and fourth assignments of error, Husband disputes the trial court's findings related to the parties' specific marital and separate property and debts. Specifically, in his third assignment of error, he argues that the Toyota RAV4, listed in his property affidavit, was not marital property because there was no evidence that he owned the vehicle at the time of the divorce filing. In his fourth assignment of error, he argues that the trial court erred by allocating credit card debt to him as his separate debt, and by finding that he engaged in financial misconduct.

## CURED FINANCIAL MISCONDUCT

{¶38} In the court's decision issued September 22, 2021, the court found that Husband engaged in financial misconduct due to his non-compliance in providing financial documents needed by the court to reach its final decision. However, in that same decision, the trial court also indicated that the financial misconduct had been cured through the property division and assignment of nonmarital debt. Husband raised the issue of financial misconduct in his motion to correct, and at the hearing on December 1, the court again

stated that it found the misconduct cured. The court reiterated in its December 3 entry that it was stated, on the record, that the misconduct issue was rendered moot in the final property division.

**{¶39}** Thus, we need not address the issue of financial misconduct, as the trial court found any financial misconduct cured, and Husband demonstrates no prejudice resulting from the trial court's earlier finding.

**STANDARD OF REVIEW FOR THE DIVISION OF PROPERTY AND DEBT**

**{¶40}** In a divorce action, the trial court engages in a two-step process in dividing the property of the parties. *Anderson v. Anderson*, 12th Dist. Warren No. CA2019-10-118, 2020-Ohio-4415, ¶ 6. First, the trial court must classify the parties' property as either marital or separate. *Id.* at ¶ 6. Marital property is property that is acquired during the marriage, which is the period of time from the date of marriage through the date of the final hearing in an action for divorce. R.C. 3105.171(A)(3)(a)(i) and (A)(2)(a). A party seeking to have property classified as separate, or nonmarital, has the burden of proof by a preponderance of the evidence, to trace the asset to separate property. *Peck v. Peck*, 12th Dist. Butler No. CA93-12-244, 96 Ohio App. 3d 731, *734. The preponderance of the evidence means the greater weight of the evidence—which can be infinitesimal—that is necessary to destroy the equilibrium; it is proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *State v. Stumpf*, 32 Ohio St. 3d 95, 102 (1987).

**{¶41}** Second, after determining the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (D); *Wilson v. Wilson*, 12th Dist. Warren No. CA2004-04-037, 2004-Ohio-6248, ¶ 5. "Although the statute does not mention debt as an element of separate or marital property, the rules of marital assets have consistently applied to

marital and separate debt." *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 35. When debt is accumulated during the marriage, the burden is on the party seeking to have that debt classified as a separate liability to demonstrate, by a preponderance of the evidence, that such debt was the separate obligation of the other spouse. *Nichols-Ross v. Ross*, 12th Dist. Butler No. CA2008-03-090, 2009-Ohio-1723, ¶ 26.

{¶42} We review the trial court's classification of property and debt as marital or separate under the manifest weight of the evidence standard. *Cooper v. Cooper*, 12th Dist. Clermont No. 2013-02-017, 2013-Ohio-4433, ¶ 13. The weight of the evidence concerns "the great amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 11. There is a presumption that the findings of the trial court are correct, as the trial judge is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony." *Id.* Our analysis requires us to review the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice. *Sieber v. Sieber*, 12th Dist. Butler Nos. CA2014-05-106 and CA2014-05-114, 2015-Ohio-2315, ¶ 19.

### THE TOYOTA RAV4

{¶43} In his property affidavit, Husband included a Toyota RAV4 vehicle, titled in his name, with a fair market value of $4,000.00. The affidavit also listed a motor vehicle debt in the amount of $4,000.00 owed to Discover, and stated that the vehicle had been transferred to family in Nigeria. Inconsistent with his affidavit, Husband later testified that he incorrectly listed the car as titled in his name, and also stated that his brother, a car

dealer in Nigeria, sent him the money to purchase the vehicle. Husband claimed that he never owned the vehicle. Wife testified that she saw the RAV4 in the driveway in the fall 2019, and that she saw paperwork regarding the vehicle in the home.

{¶44} In its August 6, 2021 decision, the court ordered Husband to bring "full documentation regarding the RAV4, its final disposition, and the payoff for the debt [including] full statements showing the purchase and payoff." At the hearing on August 20, 2021, Husband informed the court that he did not have any documentation for the RAV4 vehicle and that his brother could not provide him with any documentation. Husband also failed to provide any documentation for the vehicle at the hearing on September 21, 2021.

{¶45} Despite the trial court's efforts to have Husband produce the appropriate records, there is very little evidence regarding the RAV4. The trial court had difficulty reconciling Husband's various statements regarding the vehicle, particularly when Husband refused to provide the information regarding the sale, disposition, and shipment of the RAV4, or documentation to substantiate his claim that his brother sent him money for the vehicle.

{¶46} Husband failed to appear at the last hearing, and thus the court was left with minimal information regarding the vehicle. The credit card statements showed two large cash advances, one for $2,000 from the Discover account, and one for $1,200 from the PNC account, both on October 21, 2019, which was around the time Wife testified about seeing the car in the driveway. There was also a charge from Dry Ridge Toyota for $1,600, which Wife related to either the RAV4 or another marital vehicle. Husband failed to attend the hearing, and thus the court heard nothing to dispute Wife's explanation of these charges.

{¶47} After a review of the record, we do not find that the trial court erred in allocating the RAV4 as marital property. There is conflicting evidence regarding the purchase,

ownership, and disposition of the RAV4. Throughout the course of these proceedings, there was evidence presented to support the trial court's determination that Husband purchased a RAV4 during the marriage and that the vehicle was marital property. Husband was given multiple opportunities to present documentation to the contrary and failed to do so. The trial court was left with no choice but to make reasonable inferences and determine what weight to assign the testimony given. *Hall v. Hall*, 12th Dist. Butler No. CA2018-O5-091, 2019-Ohio-81, ¶ 25. Accordingly, Husband's third assignment of error is overruled.

## THE CREDIT CARD DEBT

{¶48} The trial court reviewed the credit card statements at the hearing on September 21, 2021, and found that $612.86 on the Discover account, $5,180.03 on the PNC account, and $2,591.63 on the Capital One account were all nonmarital charges. In its decision issued September 22, 2021, the court ordered Husband to pay these nonmarital debts and hold Wife harmless.

{¶49} At the initial hearing on January 21, 2021, Husband testified that the charges were incurred during the marriage but provided only limited documentation. He failed to provide the specific documentation requested by the court at the second hearing on August 20, 2021. He then failed to appear at the final hearing in September to discuss the charges in the documentation, leaving the court with only Wife's explanations for the charges.

{¶50} Wife testified about specific charges, stating that Husband was always getting "personal stuff" from Amazon, such as shoes and electronics. She also stated that the charges for IDT Boss International Calling were for calls he made to Nigeria, claiming he was on the phone "every day." There were also some cash advances and travel expenses she claimed to be Husband's personal expenditures, as well as clothing and luggage for his family in Nigeria. Wife stated that she did not consent to these purchases and that "he did whatever he wanted."

{¶51} The trial court was left to discern how best to allocate the debt associated with the credit card accounts. After a review of the record, we find that there was evidence presented to support the trial court's determination that the majority of the debts on the credit cards were Husband's separate debts, and thus should be allocated to him as his sole responsibility. Husband provided no evidence to dispute Wife's testimony that the debts were incurred by Husband, for Husband, and therefore were separate debts. Wife's testimony regarding the charges was sufficient to permit the trier of fact to conclude that the debts were nonmarital as opposed to marital. Accordingly, Husband's fourth assignment of error is overruled.

{¶52} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.