[Cite as *McNeal v. Mahon*, 2016-Ohio-5373.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


JASON T. MCNEAL,                                  :

    Plaintiff-Appellee,                    :               CASE NO.  CA2015-11-094

                                         :               O P I N I O N
   - vs -                                                         8/15/2016

                                           :

HEATHER N. MAHON,                                :

    Defendant-Appellant.                  :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2013 DRA 1406


Mark Tekulve, 785 Ohio Pike, Cincinnati, Ohio 45245, for plaintiff-appellee

Rollman, Handorf & Conyers, LLC, Jeffrey M. Rollman, 5740 Gateway Blvd., Suite 202, Mason, Ohio 45040, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1}   Defendant-appellant, Heather N. Mahon ("Mother"), appeals from a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, denying her motion to modify child support and her request to relocate and change her children's school district.  For the reasons set forth below, we affirm the trial court's decision.

{¶ 2}   Mother and plaintiff-appellee, Jason T. McNeal ("Father"), were divorced on March 31, 2014.  At the time of their divorce, Mother and Father had two daughters, Katelynn

(born in 2001) and Gracie (born in 2005). Mother also had two other children who were born during the marriage as a result of an extra-marital affair. The father of these two children is presently engaged to Mother.

{¶ 3} At the time of their divorce, Mother and Father had entered into an agreed shared parenting plan, which was adopted by the court and incorporated into the final decree of divorce on March 31, 2014. The shared parenting plan provided that both Mother and Father were the residential parents of Katelynn and Gracie. Father was given parenting time with both daughters every Wednesday from 4:00 p.m. to 8:00 p.m. and every weekend from Friday after school or work until Monday after school or work. Both Father and Mother resided in Batavia, Ohio, with Father living in the marital home and Mother renting an apartment. The parenting plan specified that "the children shall attend school in the district of Father's residence, which currently is the West Clermont School District."

{¶ 4} Pursuant to the parties' agreement, the parenting plan required Father to "pay the cost of all school fees, school supplies, school activities, school photographs, and sports activities," with the exception of cheerleading. Mother's child support obligation was deviated to zero and Father's child support obligation was deviated to $200 per month. In addition to paying $200 a month in child support, the shared parenting plan required that Father provide health insurance for Katelynn and Gracie and that he pay 100 percent of their uncovered healthcare expenses.

{¶ 5} On June 27, 2014, approximately three months after the parties divorced, Mother filed a motion to modify child support, asking the court to increase Father's support obligation to $742 a month. In her motion, Mother listed the following as the circumstances that had changed since the decree of divorce had been entered in March 2014: "[F]ather * * * made a verbal agreement with me and has not done so. Also [F]ather has a promotion as well."

{¶ 6} About a month later, on July 22, 2014, Mother filed a motion to modify parenting time, asking the court to modify Father's parenting time to the Clermont County Guideline Parenting Schedule. Mother did not seek to terminate shared parenting, but rather sought to modify the terms of the shared parenting plan so that Katelynn and Gracie would spend some weekends in Mother's care.

{¶ 7} Father filed a motion on October 3, 2014, seeking to have Mother found in contempt for her "willful failure to comply with the previous orders of the Court regarding parenting time." Father alleged Mother refused to allow him to exercise his parenting time with Katelynn "for the past 2-3 months." Father later supplemented his motion, asking the court to order family counseling for himself and Katelynn. Mother responded to Father's motion by requesting that a guardian ad litem ("GAL") be appointed for Katelynn. The trial court granted Mother's motion and appointed a GAL for Katelynn on March 4, 2015.

{¶ 8} On May 14, 2015, Mother filed a Notice of Intent to Relocate, informing Father and the court that she sought to move with Katelynn and Gracie from her apartment in Batavia, Ohio into her fiancé's home "on the west side" in Green Township, Hamilton County, Ohio. Mother also sought to change Katelynn's and Gracie's school district from the West Clermont School District to the Oak Hills School District.

{¶ 9} Father filed a "Second Supplemental Motion" on June 10, 2015, seeking to modify parenting time, or in the alternative, to have himself named as the residential parent. Father also sought to have Mother found in contempt for failing to pay certain debts that she was obligated to pay as a result of the divorce decree.

{¶ 10} On September 11, 2015, Mother filed a motion to hold Father in contempt for failing to pay the costs of Katelynn's and Gracie's school supplies and sports activities. She also claimed Father "interfered with [her] parenting time by not giving [her] the right of first refusal to have parenting time with * * * Gracie * * * in the event [Father] was away overnight

- 3 -

when he was with the child. This occurred on August 8, 2015."

{¶ 11} A hearing on the foregoing motions was held before the trial court on October 2, 2015, at which time the court heard testimony from Mother, Father, paternal grandfather, Mother's fiancé, the GAL, a school counselor from Glen Este Middle School and Glen Este High School, and a counselor from Compass Point Counseling Center who had provided counseling to Gracie in July and August 2015. The GAL's initial report from May 2015, and the GAL's supplemental report from June 2015, were entered into evidence as court exhibits. Also entered into evidence were, among other things, receipts from 2015, showing Mother's payment of various expenses for Katelynn's and Gracie's sporting and extracurricular activities, certified mail receipts showing Mother's attempt to serve documents on Father in July 2015 and August 2015, Father's September 11, 2015 paystub from Staples, receipts showing Father's payment of Katelynn's soccer dues in February 2015, and text messages exchanged between the parties.

{¶ 12} Following the hearing, the trial court conducted an in camera interview of Gracie and Katelynn. Thereafter, on October 19, 2015, the trial court issued a decision on the pending motions. The court denied Father's October 3, 2014 motion to hold Mother in contempt for withholding his parenting time with Katelynn, finding that Father had "agreed it was not in Katelynn's best interest to force her to see him until he and Katelynn improve their relationship through counseling." The court then ordered that both Katelynn and Gracie be enrolled in counseling, and that Mother and Father "participate in counseling * * * and follow [the counselor's] recommendations."

{¶ 13} The court denied Father's request to terminate shared parenting, but did grant Mother and Father's requests to modify the terms of the shared parenting plan. After considering the best interest factors set forth in R.C. 3109.04(F)(1), the court determined the current parenting schedule was not in Gracie's best interest as it did not allow her to

- 4 -

participate in any family activities with her younger siblings. The court determined "Gracie should have weekend time with each parent and with her siblings" and ordered that Father have parenting time "every Wednesday and Thursday overnight and every other weekend." As for Katelynn, the court ordered that it was not in Katelynn's best interest for Father to exercise parenting time with her until their relationship improved through counseling. The court did order, however, that Father could attend Katelynn's sports and extracurricular activities.

{¶ 14} Mother's June 27, 2014 motion to modify child support was denied by the trial court after the court determined Mother had failed to prove a change in circumstances between the date the decree was filed and the date the motion was filed. Mother's motion to hold Father in contempt for failing to give her the right of first refusal for parenting time with Gracie on August 8, 2015, was denied, and the shared parenting plan was modified to reflect that "[n]either parent has the right of first refusal if the other parent is unavailable for his/her parenting time. The parent who is unavailable for his/her parenting time must make suitable child care arrangements for their children." Mother's motion to hold Father in contempt for failing to pay for Katelynn and Gracie's school supplies and sports activities was granted in part, and Father was ordered to pay $372.79 to cover Katelynn's volleyball expenses and school supplies. Father was not found in contempt, however, for failing to pay Gracie's cheerleading expenses as the shared parenting plan did not require Father to pay such expenses and there was no evidence presented that Father had agreed to pay for such expenses. Mother was found in contempt for failing to timely pay certain marital debts, but the court determined Mother had purged the contempt by paying the debt after Father's motion had been filed.

{¶ 15} As for Mother's request to change Katelynn's and Gracie's school district and relocate with the children to her fiancé's home in Green Township, the trial court held as

follows:

> Although it is understandable that [Mother] wants to live with her fiancé and their two younger children, her two older children are under enough stress without relocating them to the other side of town, away from all friends and family. This court denies Mother's request to relocate her children to the west side of town. Mother may choose to move to the west side, but the parties' children will remain enrolled in the West Clermont School District. All extracurricular activities for the children will remain based in the West Clermont School District area.

{¶ 16} Mother timely appealed the trial court's decision, raising two assignments of error for our review.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED WHEN IT DID NOT PERMIT THE CHILDREN TO MOVE TO AND TO ATTEND SCHOOL ON THE WEST SIDE OF TOWN.

{¶ 19} In her first assignment of error, Mother argues the trial court's denial of her request to permit the children to move to Green Township and to attend a new school district was an abuse of the court's discretion and was against the manifest weight of the evidence. Mother argues the trial court erred when it "presumed" that Father had been made the residential parent for school purposes because "both parents felt it was important for the children to continue their education in the West Clermont School District." She contends the "current situation is not working and * * * [is not] in [the children's] best interest."

{¶ 20} It is well established that in reviewing a domestic relations issue, an appellate court employs an abuse of discretion standard of review. *Thompson v. Cannon*, 12th Dist. Fayette No. CA2015-02-003, 2015-Ohio-2893, ¶ 21; *Renner v. Renner*, 12th Dist. Clermont No. CA2014-01-004, 2014-Ohio-2237, ¶ 16. An abuse of discretion is more than an error in judgment or law; it connotes that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 21} A manifest weight challenge concerns "'the inclination of the *greater amount of*

*credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In a manifest weight challenge, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10. "If the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 22} "Upon the filing of [a] notice of intent to relocate as provided in R.C. 3109.51(G)(1), the trial court must first determine whether any court orders, such as an agreed divorce decree, separation agreement, or shared parenting plan, limit the ability of the parent filing the notice to relocate." *Zimmer v. Zimmer*, 10th Dist. Franklin No. 00AP-383, 2001 WL 185356, *3 (Feb. 27, 2001). *See also In re R.L.S.*, 12th Dist. Warren No. CA2013-12-117, 2014-Ohio-3294, ¶ 12. If there are no court orders limiting the ability of the parent to relocate, the court may proceed with a hearing to revise the visitation schedule as provided in R.C. 3109.051(G)(1). *Id.* However, "[i]f a court order expressly or implicitly restricts [a] residential parent's ability to relocate, R.C. 3109.051(G)(1) does not govern the court's authority regarding relocation." *Id.* at ¶ 13. Rather, under these circumstances, the court may prevent the parent from relocating and changing the child's school district where relocation is not in the children's best interests. *Id.*, citing *Zimmer* at *3-4.

{¶ 23} The burden rests with the party seeking to relocate to establish that relocation and a change of school districts is in the best interest of the children. *Id.* at ¶ 14, citing

*Salisbury v. Salisbury*, 11th Dist. Portage Nos. 2005-P-0010 and 2005-P-0084, 2006-Ohio-3543, ¶ 101. The trial court is permitted to look at the best interest factors set forth in R.C. 3109.04(F)(1) when the terms of the court order do not provide a standard for the trial court to employ in making its determination. *Zimmer* at *4; *In re R.L.S.* at ¶ 14.

{¶ 24} In the present case, the parties' agreed shared parenting plan, which was adopted by the court on March 31, 2014, provided that Mother and Father were both residential parents of the children. However, the shared parenting plan specified, in relevant part, that "[t]he parties agree that the children shall attend school in the district of Father's residence, which currently is the West Clermont School District. If Father moves from the West Clermont School District, the parties shall discuss and agree upon subsequent enrollment." Father was, therefore, made the residential parent for schooling purposes.

{¶ 25} As Mother sought to relocate from Batavia to Green Township and to change the children's school district from the West Clermont School District to the Oak Hills School District, she had the burden of demonstrating the move and change were in the children's best interest. Having thoroughly reviewed the record, we find no error in the trial court's denial of Mother's request to relocate the children and enroll them in a new school district. The trial court considered the best interests of the children in making this determination, and the court's decision is supported by the manifest weight of the evidence.[1]

{¶ 26} At trial, the court heard testimony that the majority of Mother's and Father's families lived in the Batavia area. Father testified he has lived in his current community for 37 years, his parents live right across the street from his home, and his extended family lives

---

1. Although Mother contends that the trial court did not consider the factors set forth in R.C. 3109.04(F)(1) or make a "specific determination of what would be in the best interest of the children on the relocation issue," we find otherwise. In ruling on the numerous motions that were presented at the October 2, 2015 hearing, the court went through the best interest factors set forth in R.C. 3109.04(F)(1). While the court initially set forth the best interest factors in a section of its decision dealing with "[Mother's] Motion to Modify Parenting Time filed July 22, 2014," the findings were used to resolve the remaining motions pending before the court—including Mother's request to relocate and change the children's school district.

nearby in the Mt. Carmel and Eastgate areas of Clermont County, Ohio. Mother explained that although her fiancé lives in Green Township, a large portion of her family resides in the Clermont County area. She testified that her mother and brother live in Batavia at the same apartment complex where she resides. Mother estimated the travel time between her fiancé's home in Green Township and Father's home in Batavia was approximately 30-45 minutes.

{¶ 27} Although Katelynn currently refuses to spend time or communicate with Father or her paternal grandparents, Gracie routinely visits with Father in accordance with the visitation schedule. Gracie plays with other children in her Father's neighborhood and often spends time with her paternal grandparents and her cousins.

{¶ 28} Furthermore, notwithstanding the fact that both Katelynn and Gracie have visited and stayed at Mother's fiancé's house in Green Township, and by all accounts enjoy spending time there with their half-siblings and Mother's fiancé, there was testimony establishing that Katelynn and Gracie are active and well-adjusted to their current school and community. Katelynn, currently a ninth grader, and Gracie, a fifth grader, have been enrolled in West Clermont schools since they began kindergarten. Katelynn has excelled in her coursework in this school district, maintaining A's and B's. Gracie has struggled at times with her schoolwork, but has been attending tutoring and now maintains A's, B's and C's in her coursework. Both children are involved in extracurricular activities in the area. Katelynn plays freshman and junior varsity volleyball for Glen Este High School and is "very popular and outgoing."

{¶ 29} With respect to whether the move and change in school district would be in Katelynn's and Gracie's best interests, Mother and Father presented conflicting testimony. Father testified, "I don't think the children should be moved to the west side, they've lived here their entire lives and they go to school, Katelynn's gone to school here since elementary

* * * and now she's in Glen Este High School which just leaves her with three more years there to finish out schooling and Gracie has been in school on this side of town her entire life as well." Mother, on the other hand, believed relocating and changing schools was in the children's best interests as it would allow Katelynn and Gracie to spend more time with their younger siblings and to engage in activities that they enjoyed doing on the "west side" of town. When questioned about the move and change in school district, the GAL testified as follows:

> [MOTHER'S ATTORNEY]: As far as the contemplated move by [Mother] with Katelynn to Green Township, do you believe that the move to Green Township is in Katelynn's best interest?
>
> [GAL]: Let me hedge my answer on that, too, because I don't really have a problem with it, I mean people move to different schools, however she does have a very firm base here with family and all her friends and I don't have any qualms, with you know, [Mother's fiancé's] stable living conditions, but I think in the long run I don't know if changing schools right now would be in her best interest. From talking to Katelynn she has a lot of friends, she's very popular and outgoing and I think it would be disruptive, she's got enough problems right now with her parents.
>
> [MOTHER'S ATTORNEY]: Do you think then that - - I know that we're in October. Would a school change be less destructive to her life if it happened around say Christmas break or during next summer after this scholastic year, do you have an opinion on that?
>
> [GAL]: I would say yeah, after the school year would probably be my opinion.
>
> * * *
>
> [FATHER'S ATTORNEY]: Okay. You testified, I guess to summarize, your position would be the least disruptive way to change schools would be at the end of the school year.
>
> [GAL]: Correct, yeah.
>
> [FATHER'S ATTORNEY]: But you are not recommending that?
>
> [GAL]: I'm not, I'm just saying the least disruptive. He gave me two choices, so.

[FATHER'S ATTORNEY]: Gotcha'. In fact your recommendation is that both Katelynn and Gracie stay in West Clermont?

[GAL]: Yeah, that is my recommendation right now.

{¶ 30} We find that the foregoing evidence supports the trial court's decision to deny Mother's request to relocate Katelynn and Gracie to the west side of town and to change their school district. Although Mother presented evidence that Katelynn no longer wishes to spend time with Father and that both Katelynn and Gracie enjoy spending time on the "west side," there was credible evidence presented to support the trial court's determination that the children "were under enough stress without relocating them to the other side of town, away from all friends and family." Given the GAL's recommendation that it was in the children's best interest to stay in the West Clermont School District and the testimony reflecting that Katelynn and Gracie had both attended West Clermont Schools since beginning kindergarten, that they had many relatives and friends in the Clermont County area, and that they were actively involved in activities in that area, we find no error in the trial court's decision to deny Mother's request to relocate the children and change their school district.

{¶ 31} In reaching this determination, we reject Mother's contention that the "major basis" for the trial court's decision was the court's "improper presumption" that Father had been made residential parent for school purposes "because both parents felt it was important for the children to continue their education in the west Clermont School District." The record reflects that the trial court's decision was based on the evidence presented at the October 2, 2015 hearing and its consideration of the best interest factors set forth in R.C. 3109.04(F)(1).

{¶ 32} Mother's argument is, therefore, without merit and her first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} IT WAS AN ABUSE OF DISCRETION NOT TO MODIFY CHILD SUPPORT WHEN REQUESTED BY A PARTY AND THE COURT HAS THE INFORMATION NEEDED.

{¶ 35} In her second assignment of error, Mother argues the trial court erred in finding that there had not been a change of circumstances that would allow modification of Father's child support obligation.

{¶ 36} "Trial courts are given broad discretion in determining whether to modify child support orders." *Le v. Bird*, 12th Dist. Butler No. CA2005-04-090, 2006-Ohio-204, ¶ 5, citing *Woloch v. Foster*, 98 Ohio App.3d 806, 810 (2d Dist.1994). An appellate court will not overturn a trial court's decision regarding child support absent an abuse of discretion. *Id.*, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997).

{¶ 37} "The modification of a child support order is governed by the requirements of R.C. 3119.79." *Banfield v. Banfield*, 12th Dist. Clermont Nos. CA2010-09-066 and CA2010-09-068, 2011-Ohio-3638, ¶ 18. When considering a motion to modify a child support order, the trial court must recalculate the amount of support required to be paid pursuant to the statutory child support guideline schedule and the applicable worksheet using the parties' updated financial information. R.C. 3119.79(A). A deviation of ten percent in the amount to be paid between the original support order and the recalculated amount under the current circumstances is deemed to be a "change of circumstance substantial enough to require a modification of the child support amount." *Bird*, 2006-Ohio-204 at ¶ 6, quoting R.C. 3119.79(A).

{¶ 38} R.C. 3119.79(A) must also be read in conjunction with R.C. 3119.79(C), which provides:

> If the court determines that the amount of child support required to be paid under the child support order should be changed due to *a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order,*

the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.

(Emphasis added). "R.C. 3119.79(C) [therefore] provides an independent basis for permitting modification of an existing child support order without consideration of the ten percent change discussed in subdivision (A) of the statute." *Banfield* at ¶ 20. *See also Flege v. Flege*, 12th Dist. Butler No. CA2003-05-111, 2004-Ohio-1929, ¶ 33.

{¶ **39**} "Where * * * the parties [have] voluntarily agree[d] to the amount of the obligor's child support obligation, a trial court granting a motion for modification must find both (1) a change of circumstances, and (2) that such a change of circumstances 'was not contemplated at the time of the issuance of the child support order.'" *Bird* at ¶ 9, quoting *Bonner v. Bonner*, 3d Dist. Union No. 14-05-206, 2005-Ohio-6173, ¶ 11.

{¶ **40**} In the present case, Mother and Father had reached an agreement regarding child support at the time their final decree of divorce was adopted by the trial court on March 31, 2014. Pursuant to their agreement, Mother's child support obligation was deviated to zero and Father's child support obligation was deviated to $200 a month. In addition to paying $200 a month in child support, Father provided medical coverage for Gracie and Katelynn, paid 100 percent of their uncovered healthcare expenses, and was responsible for paying the cost of all "school fees, school supplies, school activities, school photographs, and sports activities," with the exception of cheerleading.

{¶ **41**} Less than three months after the final decree of divorce had been filed by the trial court, Mother moved to modify child support on the basis that "[F]ather * * * made a verbal agreement with me and has not done so. Also [F]ather has a promotion as well."

- 13 -

Mother did not testify or present evidence at the October 2, 2015 hearing regarding the "verbal agreement" referenced in her motion to modify child support. With respect to Father's "promotion," Father testified about a year and one-half to two years ago, he became a supervisor at his job. Father was paid weekly, with his annual salary totaling $57,512. In 2015, Father received an "incentive" of $5,782.15 from his company. According to Father, he had only received one "incentive" from the company, and it was not guaranteed year to year. Father's marginal health insurance cost was $778. The parties stipulated that Mother's income should be imputed to $15,080 as she was currently unemployed.

{¶ 42} After considering the foregoing evidence, the trial court found Mother "did not prove that there was a change in circumstances from March [31], 2014, to June 27, 2014, which would support her request to modify child support." On appeal, Mother does not contend that there was a change of circumstances as contemplated by R.C. 3119.79(A).[2] Rather, Mother contends "[t]here was a change of circumstances in that * * * Katelynn lives full time with Mother * * * [and] does not visit with Father." Mother also argues that Father's failure to "timely mak[e] payments" for Katelynn's and Gracie's medical bills and activities constitutes a change of circumstances that would allow modification of child support.

{¶ 43} Mother did not set forth the aforementioned reasons as a basis for modification of the child support award in her June 27, 2014 motion. Assuming such arguments had been properly before the trial court, Mother failed to present evidence demonstrating that there had been a change of circumstances between the date the final decree of divorce had been entered on March 31, 2014, and the date Mother moved to modify child support. With respect to Mother's claim that Father failed to timely make payments for Katelynn's and

---

2. At oral argument before this court, Mother's attorney indicated the appeal was "not going under the 10 percent test. You don't need 10 percent if there's a change of circumstance." The focus of our analysis, therefore, will be on whether Mother demonstrated an independent basis for permitting modification of an existing child support order without consideration of the ten percent change discussed in subdivision (A) of R.C. 3119.79.

Gracie's medical bills and activities, Mother failed to present evidence or testimony that Father neglected his obligations between March 31, 2014 and June 27, 2014. The testimony and exhibits Mother offered at the October 2, 2015 hearing dealt with bills and expenses that were incurred in 2015, months after Mother filed her motion to modify child support in June 2014. Father's failure to pay expenses in 2015 could not serve as the basis for Mother's June 27, 2014 motion to modify child support.

{¶ 44} Katelynn's refusal to spend time with Father also could not serve as the basis for Mother's June 27, 2014 motion to modify child support. Testimony from the October 2, 2015 hearing indicated Katelynn did not stop spending time with Father until sometime in October 2014.[3] Mother's motion to modify child support therefore predated Katelynn's refusal to spend time with Father. As such, Katelynn's refusal to spend time with Father could not serve as the change of circumstances allowing modification of the child support award.

{¶ 45} Accordingly, for the reasons stated above, we find no error in the trial court's denial of Mother's motion to modify Father's child support obligation. Mother's second assignment of error is overruled.

{¶ 46} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.

---

3. There was conflicting evidence presented at the October 2, 2015 hearing regarding when Katelynn stopped visiting with Father. The GAL indicated it was sometime in October 2014, while Mother indicated it was in July 2014. The trial court found "Katelynn has not had a relationship with [Father] since October 2014." Regardless of whether it was July 2014 or October 2014, Katelynn's refusal to have contact with Father could not serve as the basis for Mother's June 27, 2014 motion to modify child support as her refusal did not occur until after Mother filed the motion.