[Cite as *Schaible v. Schaible*, 2022-Ohio-4717.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| ADAM SCHAIBLE, | : | |
| Appellant, | : | CASE NO. CA2022-06-029 |
| | : | O P I N I O N |
| - vs - | | 12/28/2022 |
| | : | |
| NATALIE SCHAIBLE, | : | |
| Appellee. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2018 DRA 00893


Cathy R. Cook, for appellant.

Jordan M. Feldkamp, for appellee.



**S. POWELL, P.J.**

{¶ 1} Appellant, Adam Schaible, appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, ordering him to turn over any ammunition he might have had for the four firearms appellee, Natalie Slater fka Schaible, agreed to purchase from him as part of their divorce. Adam also appeals the domestic relations

court's decision modifying the terms of his and Natalie's shared parenting plan in regard to their respective holiday parenting time schedules to comport with the court's standard holiday parenting time schedule. For the reasons outlined below, we affirm the trial court's decision in part and reverse in part.

**Facts and Procedural History**

{¶ 2} Adam and Natalie were married on September 5, 2010. There was one child born issue of the marriage, a boy, "AJ," born on April 14, 2014. Adam filed a complaint for divorce from Natalie on July 25, 2018. Adam and Natalie thereafter entered a shared parenting plan for AJ that became effective as of August 17, 2020. The domestic relations court issued a decree of shared parenting and a final decree of divorce approving and incorporating that shared parenting plan on December 18, 2020. That shared parenting plan set forth the following holiday parenting time schedule for Adam and Natalie:

1.9. Holiday Time.

| Holiday | Even Years | Odd Years | Parenting Time |
|---|---|---|---|
| Thanksgiving | Adam | Natalie | Wed. 6:00 p.m. to Fri. 6:00 p.m. |
| Christmas Eve | Adam | Natalie | 12/23 noon to 12/24 9:00 p.m. |
| Christmas Day | Natalie | Adam | 12/24 9:00 p.m. to 12/26 6:00 p.m. |
| Mother's Day | Natalie | Natalie | 10:00 a.m. to 9:00 p.m. |
| Father's Day | Adam | Adam | 10:00 a.m. to 9:00 p.m. |
| AJ's Birthday (school) | Adam | Natalie | 5:00 p.m. to 9:00 p.m. |
| AJ's Birthday (no school) | Adam | Natalie | 9:00 a.m. to 9:00 p.m. |

AJ will celebrate all other holidays with the parent who has regular weekly parenting time on that day.

{¶ 3} On March 17, 2021, a hearing was held before a domestic relations court

magistrate to address, among other things, Natalie's motion to modify the holiday parenting time schedule. Adam and Natalie were the only two witnesses who testified at this hearing.

{¶ 4} During a break in the proceedings, the parties reached an agreement for Natalie to pay Adam $5,000 in exchange for the four "guns" or "firearms" that Adam had previously provided to the Clermont County Sheriff's Office for safe keeping. There is no dispute that the agreement read into the record by the magistrate did not make any mention of whether Natalie would also receive any "ammunition" that Adam might have had for those four firearms. Rather, the agreement read into the record merely stated:

> Okay, so let me make sure I've got this right. The guns listed on, listed on Exhibit 11, pages 22 and 23, the highlighted four, those are going to be released by the Clermont County Sheriff to Natalie. Natalie is going to pay Adam $5,000 within 30 days. And then she will retain possession and ownership of the guns?

To this, Natalie's counsel stated, "Correct," with Natalie herself responding, "Okay."

{¶ 5} Following Adam's cross-examination, Natalie testified about what she believed was in their son AJ's best interest regarding their respective holiday parenting time schedules. This included Natalie testifying about the importance she and her family placed on holidays like Easter, Memorial Day, Labor Day, and Halloween. This also included Natalie testifying that under their current holiday parenting time schedule that Adam would have AJ on Easter for back-to-back years, on Memorial Day and Labor Day for three consecutive years, and on Halloween for four years straight. As it relates to Halloween specifically, Natalie testified that their current parenting time schedule would result in her "missing out" on a part of AJ's childhood and the "exciting time" that children have dressing up prior to going out trick-or-treating. This is why, as Natalie testified, an alternating holiday parenting time schedule would be better suited for her, Adam, and AJ, rather than the "minimal" holiday parenting time schedule then in place.

{¶ 6} On March 24, 2021, the magistrate issued a decision granting Natalie's motion

to modify the holiday parenting time schedule to correspond with the domestic relations court's standard holiday parenting time schedule. In so doing, the magistrate stated:

> Natalie requested that the Court order the Guideline Parenting Schedule for holiday parenting time. Natalie testified that under the current order, Adam will have Halloween, Memorial Day, and Labor Day through 2023. Adam testified that the holidays "even out" after 2024 and that he believes the current order is better for AJ. The Court finds that it is in AJ's best interest to see each parent on an alternating basis for holidays, and will institute the Court's Guideline Parenting Schedule for all holidays going forward.

**{¶ 7}** This resulted in the magistrate imposing the following holiday parenting time schedule:

1. The parties will have holiday parenting time as follows:

| Holiday | Even Numbered Years | Odd Numbered Years | Schedule |
|---|---|---|---|
| New Year's Day* | Adam | Natalie | 12/31 6:00p.m. to 1/1 6:00p.m. |
| Martin Luther King Day | Natalie | Adam | Sunday 6:00p.m. to Monday 6:00p.m. |
| President's Day | Adam | Natalie | Sunday 6:00p.m. to Monday 6:00p.m. |
| Easter | Natalie | Adam | Saturday noon to Sunday 6:00p.m. |
| Memorial Day | Adam | Natalie | Sunday 6:00p.m. to Monday 6:00p.m. |
| Fourth of July | Natalie | Adam | 11:00a.m. to 11:00p.m. |
| Labor Day | Adam | Natalie | Sunday 6:00p.m. to Monday 6:00p.m. |
| Halloween (Beggar's Night)** | Natalie | Adam | 5:00p.m. to 9:00p.m. |
| Thanksgiving | Adam | Natalie | Wednesday 6:00p.m. to Friday 6:00p.m. |
| Christmas Eve | Adam | Natalie | 12/23 noon to 12/24 9:00p.m. |
| Christmas Day | Natalie | Adam | 12/24 9:00p.m to 12/26 6:00p.m. |
| Mother's Day | Natalie | Natalie | 10:00a.m. to 9:00p.m. |
| Father's Day | Adam | Adam | 10:00a.m. to 9:00p.m. |
| Child's Birthday (school) | Adam | Natalie | 5:00p.m. to 9:00p.m. |
| Child's Birthday (no school) | Adam | Natalie | 9:00a.m. to 9:00p.m. |

*The year in which New Year's Day falls determines whether the holiday is in an even or odd-numbered year.

**If Beggar's Night occurs on different nights in each parent's neighborhood, then the child may participate in Beggar's Night in each parent's neighborhood.

**{¶ 8}** The magistrate then stated in regard to the agreement Adam and Natalie had reached concerning the four firearms Adam had previously provided to the Clermont County Sheriff's Office for safe keeping:

> The parties came to an agreement during the hearing. The parties agree that the Clermont County Sheriff's Office will release the following four firearms – Smith and Wesson M&P 9mm pistol (longer barrel), CZ75 pistol, Remington 870 shotgun, and Benelli Supernova M4 shotgun – to [Natalie]. Natalie will pay Adam $5000 within 30 days of March 17, 2021. Natalie will retain possession and ownership of the four firearms listed above.

There is again no dispute that the magistrate's decision does not make any reference to whether Natalie would also receive any "ammunition" that Adam might have had for those four firearms.

{¶ 9} On April 7, 2021, Natalie filed objections to the magistrate's decision. In her objections, Natalie argued the magistrate erred by not explicitly ordering Adam to turn over "all ammunition and items that are associated" with the four firearms she agreed to purchase from him. Approximately two weeks later, on April 19, 2021, Adam filed his own objections to the magistrate's decision. In his objections, Adam argued the magistrate erred by modifying the holiday parenting time schedule to correspond with the domestic relations court's standard holiday parenting time schedule. To support this objection, Adam argued that "[n]othing has changed" since the domestic relations court adopted their shared parenting plan that included their original holiday parenting time schedule. Adam also argued that Natalie "produced no evidence" that it would be in AJ's best interest to alter that schedule.

{¶ 10} On June 2, 2022, the domestic relations court issued a decision on Adam's and Natalie's objections. As part of that decision, the domestic relations court first noted its decision to sustain Natalie's objection with respect to the ammunition and items associated with the four firearms that Natalie had agreed to purchase from Adam. In so holding, the domestic relations court stated:

> With respect to the ammunition, the firearms were awarded to [Natalie]. The Court considers the ammunition to be part and

parcel of the firearms. [Adam] is to turn over the ammunition to his attorney within two weeks of the filing of this document. [Adam's] counsel will transfer the ammunition to [Natalie's] counsel. Thus [Adam's] objection is overruled and [Natalie's] objection is sustained.

{¶ 11} The domestic relations court then noted its decision to overrule Adam's objection to the magistrate's decision modifying the parties' holiday parenting time schedule to correspond with the court's standard holiday schedule. In so holding, the domestic relations court stated:

With regard to the objections to holiday and birthday time, the Court adopts the Magistrate's decision. In her eleven page decision, it is clear that the Magistrate carefully weighed the best interest of the child and attempted to craft an equitable decision. The Magistrate also included a specific item in her decision that explicitly told the parties that the case is a high conflict case "because of their own choices, and that it does not need to continue to be a high conflict case. The parties must be mindful that their decisions impact AJ first and foremost." This court will not sustain objections simply to add to the parties' parenting time disagreements when the Magistrate appropriately considered all issues. Accordingly the objections as to birthday and holiday time are overruled.

{¶ 12} On June 22, 2022, Adam filed a notice of appeal from the domestic relations court's decision. Adam's appeal was submitted to this court for decision on November 9, 2022. This appeal now properly before this court for decision, Adam has raised two assignments of error for review.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED BY AWARDING DEFENDANT-APPELLEE THE AMMUNITION FOR THE GUNS.

{¶ 15} In his first assignment of error, Adam argues the domestic relations court erred by ordering him to turn over to Natalie any "ammunition" he might have had in his possession for the four firearms Natalie had agreed to purchase from him. This is because, according to Adam, it was error for the domestic relations court to find any ammunition that

he may have had for those firearms to be "part and parcel" to those firearms.  We agree.

{¶ 16} The agreement between Adam and Natalie referred only to the four guns/firearms that Adam had previously provided to the Clermont County Sheriff's Office for safe keeping.  The agreement was therefore limited in two distinct manners.  First, the agreement was limited to "guns" or "firearms" without any mention of "ammunition."  Second, the agreement was limited to just those four firearms that Adam had previously provided to the Clermont County Sheriff's Office.  These limitations necessarily meant that once Natalie paid Adam the agreed upon $5,000 that the Clermont County Sheriff's Office would release the firearms in its possession to Natalie.  Adam's and Natalie's agreement would then be complete.  The domestic relations court, however, required something more.  The domestic relations court also required Adam to turn over to Natalie any ammunition that he might have had in his possession for those four firearms.

{¶ 17} Given the plain language of Adam's and Natalie's agreement, ordering Adam to turn over to Natalie any ammunition that he may have had in his possession for the firearms Natalie agreed to purchase from him was error.  It was also error for the domestic relations court to find any ammunition that Adam may have had in his possession for those firearms was "part and parcel" to those firearms.  The terms "firearms" and "ammunition" refer to very specific, and very different, things.  This is evidenced by the definition of "firearm" contained within the Ohio Revised Code.[1]  This is also evidenced by the fact that it was the Clermont County Sheriff's Office that was in possession of the firearms, whereas it was Adam who was supposedly in possession of the ammunition for those firearms.  If Adam's and Natalie's agreement was to also include any ammunition that Adam may have

---

1. R.C. 2923.11(B)(1) defines "firearm" to mean "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."  This includes an "unloaded" firearm and "any firearm that is inoperable but that can readily be rendered operable."  Therefore, given this definition, a firearm is considered something wholly separate and apart from the ammunition, i.e., the projectiles, that may be used in said firearm.

had in his possession for those firearms, that should have been specifically set forth within their agreement. It was not. The domestic relations court cannot change the terms of Adam's and Natalie's agreement, nor can the domestic relations court interpret the terms of their agreement differently, when the terms of the agreement are otherwise unambiguous.

{¶ 18} In so holding, we note that neither Natalie's counsel nor Natalie objected to the agreement's wording when the magistrate read the terms of the agreement into the record. Natalie's counsel instead stated, "Correct," with Natalie herself responding, "Okay." For Natalie to now claim the terms of her and Adam's agreement was something other than what was read into the record by the magistrate falls flat and seems, to this court, somewhat disingenuous given the contentious nature of these proceedings. There should be no more property disputes, however, given the express terms of Adam's and Natalie's final divorce decree, which states that all personal property that was previously divided, and all other untitled personal property, was awarded to the party in possession of that property. For these reasons, Adam's first assignment of error has merit and is sustained.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED BY MODIFYING THE HOLIDAY SCHEDULE FROM THAT ORDERED IN THE DECREE OF SHARED PARENTING TO THE COURT'S STANDARD HOLIDAY SCHEDULE.

{¶ 21} In his second assignment of error, Adam argues the domestic relations court erred by modifying the terms of the shared parenting plan regarding holiday parenting time to comport with the court's standard holiday parenting time schedule. We disagree.

{¶ 22} Adam's and Natalie's original holiday parenting time schedule, which was set forth within their shared parenting plan, was approved by the domestic relations court and subsequently incorporated into both the shared parenting decree and final decree of divorce. "When a parent seeks to modify the terms of the shared parenting plan, such as

the case here, the best-interest standard in R.C. 3109.04(E)(2)(b) applies." *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 12. Pursuant to that statute, the domestic relations court may modify the "terms" of a shared parenting plan "approved by the court and incorporated by it into the shared parenting decree" upon the request of "one or both of the parents under the decree" so long as "the court determines that the modifications are in the best interest of the children."[2]

{¶ 23} To determine what is in the best interest of a child, R.C. 3109.04(F)(1) requires the domestic relations court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the court; (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; (5) the mental and physical health of all persons involved in the situation; and (6) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. R.C. 3109.04(F)(a)-(f). The domestic relations court's determination of what is in the best interest of a child will not be reversed absent an abuse of discretion. *McNeal v. Mahon*, 12th Dist. Clermont No. CA2015-11-094, 2016-Ohio-5373, ¶ 20.

{¶ 24} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219. Most cases in which an

_____

2. The "terms" that may be modified by the domestic relations court under R.C. 3109.04(E)(2)(b) include the parent with whom the child will be physically located during legal holidays, school holidays, and other days of special importance. *In re B.H.H.*, 12th Dist. Clermont No. CA2016-10-069, 2017-Ohio-8359, ¶ 22, citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 28.

abuse of discretion is asserted involve claims that the decision is unreasonable. *Bonifield v. Bonifield*, 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 11. "A decision is 'unreasonable' when there is no sound reasoning process to support it." *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 12, citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Campbell v. 1 Spring, LLC*, 10th Dist. Franklin No. 19AP-368, 2020-Ohio-3190, ¶ 9. And an unconscionable decision is one that affronts the sense of justice, decency, or reasonableness. *King v. King*, 6th Dist. Wood No. WD-20-087, 2021-Ohio-2970, ¶ 16.

{¶ 25} As noted above, Adam argues the domestic relations court erred by finding it was in AJ's best interest to modify the original holiday parenting time schedule to comport with the court's standard holiday parenting time schedule. This court, however, can find no abuse of discretion in the domestic relations court's decision. This is because the domestic relations court's decision was not unreasonable, arbitrary, or unconscionable. Despite the change requiring more exchanges to take place throughout the year, which the record indicates could lead to AJ having more anxiety issues, the domestic relations court nevertheless found it was in AJ's best interest for him see each of his parents on an alternating basis for the various yearly holidays. The domestic relations court's standard holiday parenting time schedule will provide AJ with that alternating schedule. The magistrate reached this decision after hearing testimony from both Adam and Natalie regarding what they believed would be in AJ's best interest.

{¶ 26} The domestic relations court affirmed and adopted the magistrate's decision upon finding it "clear" that the magistrate had "carefully weighed the best interests of the child" in attempting to "craft an equitable decision." This was not error as the record fully

supports the domestic relations court's decision. This holds true even though neither the magistrate nor the domestic relations court judge specifically listed and/or directly analyzed the best interest factors set forth within R.C. 3109.04(F)(1) within either of their respective decisions. *See Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 33 ("The trial court was not required to list and analyze one-by-one R.C. 3109.04(F)(1)'s best-interest factors. * * * Rather, it was required only to consider the relevant factors."). Therefore, finding no merit to any of the arguments advanced by Adam herein in support of his second assignment of error, Adam's second assignment of error lacks merit and is overruled.

{¶ 27} The trial court's decision is reversed in part, and the requirement that Adam turn over ammunition to Natalie is hereby vacated. The trial court's modification of the holiday visitation schedule is affirmed.

HENDRICKSON and BYRNE, J., concur.