[Cite as *Schaible v. Schaible*, 2025-Ohio-320.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| ADAM ALLEN SCHAIBLE, | : | |
| Appellee, | : | CASE NO. CA2024-06-049 |
| | : | O P I N I O N |
| - vs - | | 2/3/2025 |
| | : | |
| NATALIE SCHAIBLE nka SLATER, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2018 DRA 00893

Cathy R. Cook, for appellee.

Natalie Schaible nka Slater, pro se.

**PIPER, J.**

{¶ 1} Appellant, Natalie Schaible nka Slater, appeals from the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, denying her motion to stay passport issuance for her and appellee Adam Allen Schaible's son, AJ, and request for an emergency order staying the issuance of said passport until further evidence could be provided. For the reasons outlined below, we affirm the domestic relations court's decision denying Natalie's motion and request for emergency order and,

finding Natalie's appeal to be frivolous, refer this matter to a magistrate to determine the amount of reasonable attorney fees to which Adam is entitled pursuant to Loc.R. 25(A).

**Facts and Procedural History**

{¶ 2} Adam and Natalie were married on September 5, 2010. There was one child born issue of the marriage, a boy, AJ, born on April 14, 2014. Adam filed a complaint for divorce from Natalie on July 25, 2018. Adam and Natalie thereafter entered a shared parenting plan for AJ that became effective August 17, 2020. The domestic relations court issued a decree of shared parenting and a final decree of divorce approving and incorporating that shared parenting plan on December 18, 2020. This is the second appeal arising out of Adam's and Natalie's divorce proceedings. *See Schaible v. Schaible*, 2022-Ohio-4717 (12th Dist.) (reversing and vacating domestic relations court's decision ordering Adam to turn over ammunition for four firearms Natalie agreed to purchase from Adam as part of their divorce and affirming the domestic relations decision modifying Natalie's and Adam's holiday visitation time schedule).

{¶ 3} On April 30, 2024, Natalie filed the aforementioned motion to stay passport issuance for AJ and request for an emergency order staying the issuance of said passport. In her motion, Natalie noted that she was "concerned" Adam would remove their minor son, AJ, "from not only the Court's jurisdiction but also the country." The domestic relations court held a hearing on Natalie's motion and request for an emergency order on May 28, 2024. During this hearing, the domestic relations court heard testimony from both Natalie and Adam. This included Natalie's trial counsel advising the domestic relations court that his client, Natalie, did not oppose the issuance of a passport to AJ so that AJ could travel to Canada with Adam on a fishing trip, just that she does not want AJ to go to "other places, specifically the Dominican Republic or something like that." The domestic relations court responded by noting that would be a "completely different

- 2 -

motion" than what had actually been filed.

{¶ 4} On June 11, 2024, the domestic relations court issued a decision denying Natalie's motion and request for an emergency order. In so holding, the domestic relations court determined that Natalie had provided "no evidence" to indicate Adam was a flight risk or that there was any need to restrict Adam's usage of their minor son AJ's passport to travel outside of the country. This included Adam taking AJ with him to the Dominican Republic for a wedding at the all-inclusive Hard Rock Hotel and Resort in 2025. In so doing, the domestic relations court found Natalie's motion to be "borderline frivolous" given that "she had previously agreed to allow the child [to] go on a trip to Canada." This resulted in the domestic relations court ordering Natalie to pay $500 in attorney fees to Adam. Approximately one week later, on June 18, 2024, Natalie filed a notice of appeal from the domestic relations court's decision. Following briefing, on December 18, 2024, Natalie's pro se appeal was submitted to this court for consideration. Natalie's appeal now properly before this court for decision, Natalie has raised two assignments of error for review.

**Assignment of Error No. 1:**

{¶ 5} THE TRIAL COURT ERRED BY NOT HEARING PERTINENT AND PREVIOUSLY FILED MOTIONS FIRST, AND NOT CONSIDERING THE BEST INTEREST OF THE CHILD STANDARD.

{¶ 6} In her first assignment of error, Natalie takes exception to the order in which the domestic relations court heard and decided her motion and request for an emergency order. That is to say, Natalie initially argues that it was improper for the domestic relations court to consider her motion to stay passport issuance for her and Adam's minor son, AJ, and request for an emergency order staying the issuance of said passport, when several other motions were still pending before the domestic relations court and yet to be decided.

This is because, according to Natalie, whether AJ should be issued a passport "is but a small part of a much larger and more complex case."

{¶ 7} However, while it is clear that Natalie would have preferred the domestic relations court to hear and decide the issues chronologically, in the order in which they were presented to the court, it is well established that "[a] domestic relations court has the 'inherent power to control its own docket and the progress of the proceedings in its own court.'" *Alomari v. Almajali*, 2020-Ohio-4349, ¶ 51 (12th Dist.), quoting *Tekamp v. Tekamp*, 2019-Ohio-2382, ¶ 26 (12th Dist.). Therefore, contrary to Natalie's claim, it was not an abuse of discretion for the domestic relations court to consider her motion and request for an emergency order before hearing and deciding the other various motions that were then pending before the court. This is particularly true here when considering Natalie's motion and request for an emergency order made it seem as though Adam was planning on immediately fleeing from the country with AJ never to be seen nor heard from again. The record indicates that nothing could be further from what the evidence suggests.[1] To the extent Natalie claims otherwise, such argument lacks merit.

{¶ 8} Natalie also argues the domestic relations court erred by failing to take into consideration AJ's best interest when denying her motion and request for an emergency order. Yet, as a simple review of the record indicates, the domestic relations court expressly stated that it had considered AJ's best interest when issuing its preliminary decision to deny Natalie's motion and request for an emergency order from the bench. Specifically, as the domestic relations court stated at the conclusion of the May 28, 2024 hearing:

---

1. Adam testified that he had no intention of leaving the country for any extended period of time. Adam instead testified that he was "very well rooted" to the Clermont County area given that he owns a home, is gainfully employed, belongs to a church, and has a "[b]ig friends group." This is in addition to Adam testifying that moving to another country would be a significant downgrade to his current lifestyle living in the United States.

I'm denying the motion to stay the passport issuance to AJ. I'm de—denying the request for an emergency order. There is no evidence whatsoever presented of, um, a flight risk that, uh, father would have, taking his minor son from the court's jurisdiction or also the country, which was the basis of the motion. The—um, with respect to limiting husband's use of the passport of AJ, the court, uh, sees no evidence that husband, um, ignores security risks or other, uh concerns specific to AJ in traveling, uh, at all. *The court finds it's in AJ's best interest to learn*—or, I guess not learn, continue to fish, um, however frustrating it might be for pike and walleye in Ontario and to, um—um, the wedding is more than a year away. Um, as we know, a lot can happen in a year, in—in—uh—um, overseas, as well as in the country. So I would a—assume that you're going to—everything you've demonstrated is that you [Adam] would adhere to—if [the] situation should change drastically and, um, I would imagine the planners of the wedding would think that as well.

(Emphasis added.) Therefore, because the record does not support Natalie's claim that the domestic relations court failed to take into consideration AJ's best interest when denying her motion and request for emergency order, Natalie's argument alleging the domestic relations court erred by not taking AJ's best interest into consideration when denying said motion and request for an emergency order also lacks merit.

{¶ 9} Natalie further argues the domestic relations court engaged in judicial misconduct in violation of Jud.Cond.R. 2.2 and 2.5(A). But, "allegations of judicial misconduct under the Ohio Code of Judicial Conduct are within the jurisdiction of the Board of Commissioners on Grievances and Discipline for the Supreme Court of Ohio; thus, the instant appeal is not the proper venue for such arguments." *Filby v. Filby*, 2017-Ohio-4377, ¶ 7 (11th Dist.); *see also Hayden v. Hayden*, 2004-Ohio-6483, ¶ 7 (12th Dist.) ("The Ohio Supreme Court, not the courts of appeals, has authority to determine a claim that a common pleas court judge is biased or prejudiced."). Again, to the extent that Natalie argues otherwise, such argument lacks merit. Accordingly, finding no merit to any of the arguments raised by Natalie herein, Natalie's first assignment of error lacks merit

and is overruled.

**Assignment of Error No. 2:**

{¶ 10} THE TRIAL COURT ERRED BY NOT CONSIDERING THE FACTORS USED IN DETERMINING IF SOMEONE IS A FLIGHT RISK.

{¶ 11} In her second assignment of error, Natalie argues the domestic relations court erred by failing to consider the factors listed in R.C. 2937.011(E)(4) when determining whether Adam posed a risk of fleeing the country with their minor son, AJ. However, as Natalie seemingly acknowledges within her appellate brief, R.C. 2937.011(E)(4) is not applicable to civil proceedings such as this. Rather, given its plain language, R.C. 2937.011(E)(4) applies only to criminal proceedings where the trial court is tasked with determining the types, amounts, and conditions of a defendant's bail. Therefore, contrary to Natalie's claim, the domestic relations court had no obligation to consider the factors listed in R.C. 2937.011(E)(4) when determining whether Adam posed a flight risk. The domestic relations court had an obligation to consider only that evidence which was presented at the May 28, 2024 hearing. The record indicates the trial court took that evidence into consideration when making its decision to deny Natalie's motion to stay passport issuance for AJ, and request for an emergency order staying the issuance of said passport. Accordingly, finding no merit to Natalie's claim, and no error in the domestic relations court's decision, Natalie's second assignment of error also lacks merit and is overruled.

**Adam's Motion for Attorney Fees**

{¶ 12} Adam has requested, in a separate filing, this court to grant him reasonable attorney fees in having to respond to Natalie's appeal. In so doing, Adam argues that Natalie's appeal is frivolous. Loc.R. 25(A) permits this court to award reasonable attorney fees to a party in having to respond to a frivolous appeal. The rule provides that an appeal

shall be considered frivolous "if it is not reasonably well-grounded in fact or warranted by existing law, or by a good faith argument for the extension, modification or reversal of existing law."  This describes Natalie's appeal to a "T."  Therefore, finding Natalie's appeal to be frivolous, we refer this matter to a magistrate to determine the amount of reasonable attorney fees to which Adam is entitled pursuant to Loc.R. 25(A).

{¶ 13} Judgment affirmed.

BYRNE, P.J., and M. POWELL, J., concur.